[No. G014447. Fourth Dist., Div. Three. Nov. 30, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS C. CARTER, Defendant and Appellant.

## COUNSEL

Corinne S. Shulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Garrett Beaumont and Elizabeth A. Hartwig, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WALLIN, J.**—Thomas C. Carter appeals his conviction of seven counts of unlawful subleasing of a motor vehicle, contending: (1) the statutes proscribing his conduct violate equal protection guarantees of the Fourteenth Amendment of the United States Constitution and article I, section 7 of the California Constitution; and (2) his conduct is not proscribed by the statute. We affirm.

At trial, the parties stipulated to the relevant facts. In January 1989, Carter was a part owner of U.S. Financial Company, a company that solicited individuals with negative equity in cars purchased under an installment contract or subject to a lease. The original purchaser or lessee signed an "Exclusive Agent Agreement" with U.S. Financial which gave the company 30 days to find a sublessee. U.S. Financial targeted individuals without sufficient credit to qualify for credit purchases elsewhere.

Once a sublessee was found, U.S. Financial would provide an agreement for both parties to sign. The agreement, entitled "Motor Vehicle Lease,"

purported to bind the two parties, and the sublessee agreed to make the lessee's monthly payments. If the payments were not made, U.S. Financial promised to "repossess" the car and market it again. Each time the car was marketed, U.S. Financial charged the new sublessee a transaction fee, ranging from $1,500 to $5,000. In exchange for this fee, U.S. Financial promised the sublessee that at the end of six months of successful payments it would finance the vehicle in the sublessee's name.

U.S. Financial was not a party to any of the original lease agreements, all of which prohibited transfer of an interest in the vehicles without the lienholder's consent. Under Carter's direction, U.S. Financial employees arranged subleases without notifying the lienholders. Carter received all the down payments sublessees made to U.S. Financial.

I

■ Penal Code section 571 proscribes certain motor vehicle transfer transactions when engaged in by nonparties to the original lease, conditional sale contract or security agreement.[1] Section 572 specifically excludes the parties to the original transaction from criminal prosecution.[2] Carter contends it is a violation of equal protection to allow him to be prosecuted for the same activity for which the original parties are not subject to culpability. No violation occurred because the Legislature had a rational basis for distinguishing between the two groups.

■ " '[E]qual protection of the laws means simply "that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." [Citations.]' " (*Vehicular Residents Assn.* v. *Agnos* (1990) 222 Cal.App.3d 996, 999 [272 Cal.Rptr. 216].) "In ordinary equal protection cases not involving suspect classifications or the alleged infringement of a fundamental interest, the classification is upheld if it bears a rational relationship to a legitimate state purpose. [Citations.] But if the statutory scheme imposes a suspect classification . . . or a classification which infringes on a fundamental interest . . . the classification must be closely scrutinized and may be upheld only if it is necessary for the furtherance of a compelling state interest. [Citations.]" (*Weber* v. *City Council* (1973) 9 Cal.3d 950, 958-959 [109 Cal.Rptr. 553, 513 P.2d 601].)

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] Section 572, subdivision (a) provides: "The actual or purported transfer or assignment, or the assisting, causing, or arranging of an actual or purported transfer or assignment, of any right or interest in a motor vehicle or under a lease contract, conditional sale contract, or security agreement, by an individual who is a party to the lease contract, conditional sale contract, or security agreement is not an act of unlawful subleasing of a motor vehicle and is not subject to prosecution."

■■■ Carter apparently concedes the rational relationship standard is applicable. (See *People* v. *Davis* (1979) 92 Cal.App.3d 250, 258 [154 Cal.Rptr. 817] [Legislature needed only a rational basis to classify cocaine as a narcotic]; cf. *People* v. *Olivas* (1976) 17 Cal.3d 236, 239, 251, 257 [131 Cal.Rptr. 55, 551 P.2d 375] [compelling state interest required for differential punishment between similarly situated defendants after conviction for the same crime].) We must determine if the classification set forth in sections 571 and 572 bears "some fair relationship to a legitimate public purpose." (*Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903, 913 [13 Cal.Rptr.2d 245, 838 P.2d 1198].)

The Department of Consumer Affairs sponsored Assembly Bill No. 2255, the legislation that became sections 570 through 574.[3] According to the Division of Consumer Services Legal Services Unit analysis, the purpose of the legislation was threefold: (1) to protect sublessees from paying large sums of money without acquiring an interest in the vehicle; (2) to protect lessees from suffering damaged credit ratings when sublessees fail to make payments; and (3) to protect lending institutions from losing control of their vehicles. (Dept. of Consumer Affairs, Div. of Consumer Services, Legal Services Unit, Analysis of Assem. Bill No. 2275 (1987-1988 Reg. Sess.), May 11, 1987.)[4]

Existing civil and criminal statutes were inadequate to control growth in the automobile subleasing industry. Subleasing businesses frequently changed names and locations, or they completely disappeared leaving all parties' agreements in a shambles.[5] Prosecutors were often unable to prove the specific intent to defraud required under existing penal statutes. (See § 504a.) Civil remedies proved inadequate for those victims who suffered impaired credit ratings or lost large sums of money. The Legislature could rationally conclude the evil lay not in sporadic individual transactions but in an industry which engaged essentially in a conspiracy to perpetrate fraud and interfere with contractual relationships.

Prosecuting those individuals who, for compensation, transfer or assist in transferring, or cause lessees to transfer, an interest in their leased vehicles without the lessor's consent is one way to regulate the automobile subleasing industry. (See *People* v. *Hughes* (1980) 112 Cal.App.3d 452, 459 [169 Cal.Rptr. 364] [Legislature could constitutionally enact a great taking enhancement aimed specifically at those engaged in organized large-scale crime].) Exempting lessors and lessees from prosecution protects the public

---

[3](Added by Stats. 1987 (1987-1988 Reg. Sess.) ch. 1072, § 2, p. 3625.)
[4]In 1987, the estimated exposure of lenders statewide was $50 million. (*Ibid.*)
[5]In July 1989, U.S. Financial moved and changed its name to North American Financial.

from a growing threat to secured transactions without undue interference with legitimate leasing businesses or the rights of the original parties.

Legislatures are not required to choose the best means available to regulate an industry. Sections 571 and 572 are a proper exercise of the state's police power. The distinctions created are rational and reasonably related to the legitimate state interest of protecting the public and financial institutions from businesses that interfere with their existing contracts.[6]

II

■ Carter asserts his activities are not proscribed by section 571 because his company never transferred an interest in the vehicles. In each instance, it was the lessee, one of the parties to the original lease, who signed the subleasing agreement. But one need not personally transfer an interest to be culpable.

Under section 571, subdivision (b), "[a] person engages in an act of unlawful subleasing of a motor vehicle when the person is not a party to the lease contract, . . . and assists, causes, or arranges an actual or purported transfer or assignment, as described in subdivision (a)." Subdivision (a) sets forth five elements to the offense: (1) a motor vehicle subject to a lease; (2) a person not a party to the lease, (3) a transfer by the nonparty of an interest in the vehicle to a nonparty; (4) failure to obtain written consent from the lessor by the nonparty; and (5) receipt of compensation by the nonparty.[7] (§ 571, subd. (a).)

Carter correctly reasons he did not violate section 571, subdivision (a) because he did not transfer or assign, or purport to transfer or assign, any

---

[6]Carter argues, without authority, that his "disclosed" agency should alter our analysis. It does not. Disparate treatment of agents and principals is a fact of life. (Civ. Code, § 2343, subd. 3; 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 149, pp. 144-145 [agent liable for his own tort regardless of principal's liability or direction to act].) He concedes none of the cases he cites for the proposition equal protection was violated is factually apt to his case.

[7]The subdivision reads, "A person engages in an act of unlawful subleasing of a motor vehicle if all of the following conditions are met: [¶] (1) The motor vehicle is subject to a lease contract, conditional sale contract, or security agreement the terms of which prohibit the transfer or assignment of any right or interest in the motor vehicle or under the lease contract, conditional sale contract, or security agreement. [¶] (2) The person is not a party to the lease contract, conditional sale contract, or security agreement. [¶] (3) The person transfers or assigns, or purports to transfer or assign, any right or interest in the motor vehicle or under the lease contract, conditional sale contract, or security agreement, to any person who is not a party to the lease contract, conditional sale contract, or security agreement. [¶] (4) The person does not obtain, prior to the transfer or assignment described in paragraph (3), written consent to the transfer or assignment from the motor vehicle's lessor, seller, or secured party. [¶] (5) The person receives compensation or some other consideration for the transfer or assignment described in paragraph (3)." (§ 571, subd. (a).)

lease interest; through his company, he merely prepared the paperwork by which the *lessees* subleased their vehicles. He urges further that he did not violate subdivision (b) because he did not assist in a violation of subdivision (a), which specifies the person making the transfer must be a nonparty to the original lease. He misreads subdivision (b). By its plain language, it does not predicate culpability upon assisting in a violation of subdivision (a). It prohibits a nonparty, such as Carter, from assisting in "an actual or purported *transfer or assignment,* as described in subdivision (a)." (§ 571, subd. (b), italics added.) Subdivision (b) does not say that the person making the transfer or assignment must be a nonparty.

"The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent." (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) "Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citation.]" (*Ibid.*)

Carter's construction would make section 571, subdivision (b) superfluous by interpreting it to apply only to aiders and abettors. The Penal Code already provides for culpability for all such persons. (§ 31.) Carter's interpretation of subdivision (b) would also frustrate the Legislature's intent because it would absolve those who promote and assist parties to automobile leases in unlawful or fraudulent activities that they could not do themselves.

Under our interpretation of section 571, Carter's conviction will stand if there is substantial evidence that he assisted, caused, or arranged an actual or purported transfer or assignment of a leased vehicle. That evidence is overwhelming. Carter solicited desperate lessees for the specific purpose of subleasing their vehicles. He matched lessee to sublessee, provided contracts for them to sign, and made promises to both parties to induce them into the transaction. Lessors were never notified of the transaction because Carter knew they would not give their consent. And, each time a vehicle was marketed, defendant took a large "down payment" from the sublessee. Carter's conduct was the epitome of that which the Legislature sought to prohibit.

The judgment is affirmed.

Sills, P. J., concurred.

**CROSBY, J.,** Dissenting.—No doubt the Legislature had scam artists like Carter in mind when it passed Penal Code section 571. But I agree with him. He did not violate the statute.

One cannot violate subdivision (a) of Penal Code section 571 without transferring or assigning—or purporting to transfer or assign—automobile leases, sales contracts, or security agreements. (Pen. Code, § 571, subd. (a)(3).) Carter did none of that. And while his clients did engage in such transfers, they did not violate the law because they were parties to the leases and specifically exempt from the reach of the statute under Penal Code section 571, subdivision (a)(2).

Subdivision (b) of Penal Code section 571 can only be violated by assisting a violator of subdivision (a). No one violated subdivision (a) of section 571 of the Penal Code in this case. Consequently, there was no violation of subdivision (b).

The Legislature should quickly correct this ineptly drafted statute to corral strays like Carter, but it is not our function to keep them penned up until that is done. The judgment should be reversed.

A petition for a rehearing was denied December 12, 1994, and appellant's petition for review by the Supreme Court was denied March 16, 1995.