[No. C025957. Third Dist. Sept. 14, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY BUFFINGTON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 1 of the Discussion.

1150

**COUNSEL**

David J. Richardson, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Daniel E. Lungren, Attorneys General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, W. Scott Thorpe and Jane N. Kirkland, Deputy Attorneys General for Plaintiff and Respondent.

## OPINION

**DAVIS, Acting P. J.**—After serving a prison term for nine forcible rape convictions, appellant Larry Buffington received a two-year civil commitment under the Sexually Violent Predators Act (the SVPA). (Welf. & Inst. Code, § 6600 et seq.; all references to statutory sections are to the Welfare and Institutions Code unless otherwise stated.)

On appeal, Buffington challenges the constitutionality of the SVPA on ex post facto, double jeopardy, due process, and equal protection grounds. Almost all of Buffington's challenges were resolved against him in a recent decision from our state Supreme Court, *Hubbart* v. *Superior Court* (1999) 19 Cal.4th 1138 [81 Cal.Rptr.2d 492, 969 P.2d 584].

Buffington does raise, however, one issue involving due process and three issues regarding equal protection that *Hubbart* did not consider.

His unresolved due process claim is that the SVPA's reasonable doubt standard of proof has been unconstitutionally "diluted" to a preponderance of the evidence standard of proof because the trier of fact need determine only whether it is "likely" that the alleged sexually violent predator "will engage in sexually violent criminal behavior."

Buffington's unresolved equal protection contentions allege that sexually violent predators are denied equal protection of the law compared to other persons involuntarily committed because the SVPA's definition of mental disorder and evidentiary standards are easier to meet, and the SVPA provides less treatment for the mental disorders of sexually violent predators.

We are unpersuaded. Consequently, we affirm the order of commitment.

■ The SVPA took effect in 1996. (Stats. 1995, ch. 763, § 3.) It is aimed at a select group of criminal offenders—"sexually violent predators" (SVP's)—who are considered to be extremely dangerous as the result of mental impairment, and who are likely to continue committing acts of sexual violence even after they have been punished for such crimes. (*Id.,* § 1; § 6600, subd. (a); *Hubbart* v. *Superior Court, supra,* 19 Cal.4th at p. 1144.) The purpose of the SVPA is to use a civil commitment to treat SVP's for their current mental disorders and to reduce the threat of harm otherwise posed to the public. (*Ibid.*) No punitive purpose was intended. (Stats. 1995, ch. 763, § 1.)

Pursuant to a court trial in early 1997, Buffington was found beyond a reasonable doubt to be an SVP and was committed to the state Department

of Mental Health for two years. (§ 6604; [an SVP is generally "a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a [currently] diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior" (§ 6600, subd. (a))]; *Hubbart* v. *Superior Court, supra,* 19 Cal.4th at p. 1144.) Buffington had been sentenced to prison in 1980 for nine forcible rapes against eight victims.

DISCUSSION

1. *The Issues Resolved by Hubbart\**

. . . . . . . . . . . . . . . . . . . . . . . .

2. *Due Process*

■ Buffington contends that while the SVPA purports to require proof "beyond a reasonable doubt," it requires the trier of fact to determine simply whether an offender is "likely" to engage in sexually violent criminal behavior. (§§ 6604, 6600, subd. (a).) From this, Buffington argues that "[t]he only thing proven beyond a reasonable doubt is whether a person is more likely than not to commit future offenses—regardless of the reasonable doubt language, the overall standard is still a preponderance of the evidence." This circumvention and dilution of the reasonable doubt standard, Buffington asserts, does not comport with due process.

We disagree. The reasonable doubt standard has not been circumvented or diluted.[1] The meaning of the language of a statute is not to be found in metaphysical subtleties, which may make anything mean everything or nothing. Here, the phrase, "likely [to] engage in sexually violent criminal behavior" (§ 6600, subd. (a)), is not, as Buffington would have us believe, a standard of proof. Rather, it is a prediction of dangerousness that the trier of fact must find has been proved beyond a reasonable doubt. Such a prediction is inherent in a finding of "dangerousness," and may appropriately be based on "seriously dangerous propensities." (See *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 176 [167 Cal.Rptr. 854, 616 P.2d 836] (*Hofferber*).)

---

\*See footnote, *ante,* page 1149.

[1]For his due process claims, Buffington invokes the California Constitution. (Cal. Const., art. I, §§ 7, 15.) However, the *Hubbart* court found the United States Supreme Court's analysis of federal due process principles persuasive for purposes of due process review of the SVPA under the California Constitution. Said *Hubbart* in this regard: "While we recognize our power and authority to construe the state Constitution independently . . . , we find no pressing need to do so here." (*Hubbart* v. *Superior Court, supra,* 19 Cal.4th at p. 1152, fn. 19, citation omitted.)

As the Attorney General notes, "[p]roof beyond a reasonable doubt that a person is *likely* to be a danger to others is not constitutionally deficient. The People need not [and indeed cannot] prove beyond a reasonable doubt that a person *will* commit acts making him a danger to others." (Italics added.) To require a finding that a person will commit dangerous acts would effectively eliminate all civil commitments based on dangerousness.

Rejecting a claimed violation of due process, the United States Supreme Court, in *Kansas* v. *Hendricks* (1997) 521 U.S. 346 [117 S.Ct. 2072, 138 L.Ed.2d 501] (*Hendricks*), upheld a Kansas statute which defined an SVP in a manner similar to the SVPA as " 'any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person *likely to engage in the predatory acts of sexual violence.*' " (521 U.S. at p. 352 [117 S.Ct. at p. 2077, 138 L.Ed.2d at p. 509], italics added.) The phrase at issue here is "likely [to] engage in sexually violent criminal behavior." (§ 6600, subd. (a).) We see no meaningful difference between the two for purposes of our analysis of due process under the United States and California Constitutions. The California Supreme Court, in *Hubbart*, found the *Hendricks* analysis of federal due process persuasive "for purposes of the state Constitution." (*Hubbart* v. *Superior Court, supra,* 19 Cal.4th at p. 1152, fn. 19; see also *People* v. *Superior Court (Dodson)* (1983) 148 Cal.App.3d 990, 997-998 [196 Cal.Rptr. 431] [the minimal constitutional standard for involuntary commitment is a current mental illness which creates a serious potential of substantial harm to others; "imminent danger" is not the standard].)

A due process challenge similar to Buffington's but concerning the Mentally Disordered Sex Offender (MDSO) Act (former §§ 6300-6330) was made in *People* v. *Martin* (1980) 107 Cal.App.3d 714 [165 Cal.Rptr. 773] (*Martin*). *Martin* rejected that challenge, explaining: "Appellant also argues that the prediction that a person may in the future engage in conduct dangerous to others is not sufficiently reliable [as required by the due process clause] to justify a deprivation of liberty. We recognize that liberty is a fundamental interest, and that, under the present state of the art, experts cannot predict with certainty whether persons will engage in dangerous conduct. Yet, we also recognize that persons subject to recommitment hearings pursuant to [the MDSO Act] have previously committed one or more sexual offenses. . . . Further, such persons cannot be recommitted unless they are shown to still have a mental disorder which predisposes them to commit sexual offenses. . . . We believe that a trier of fact can make reasonable assessments, based upon the evidence, whether previous offenders *currently* present a high risk of serious harm to others by reason of their continuing mental disorder. *Appellant's fundamental interest in liberty was*

*adequately protected by requiring that the standard of proof beyond a reason-*
*able doubt be utilized in establishing whether the person presents such risk.*
The compelling interest in protecting society against sexually motivated
injury and in providing beneficial treatment for such disordered persons
should not be sacrificed by requiring a certainty of prediction which is
currently impossible to attain." (107 Cal.App.3d at pp. 724-725, citations
omitted, first italics in original, second italics added.)

We conclude that the SVPA's requirement that the offender is likely to
engage in sexually violent criminal behavior does not unconstitutionally
circumvent or dilute the statute's reasonable doubt standard. (§§ 6600, subd.
(a), 6604.)

### 3. *Equal Protection*

 Buffington contends that SVP's are denied equal protection of the
law compared to other persons subject to civil commitment because the
SVPA's definition of mental disorder and the SVPA's evidentiary standards
are easier to meet, and the SVPA provides less treatment for the mental
disorders of SVP's. The *Hubbart* court declined to consider these three
issues because they had not been properly presented in those proceedings.
(*Hubbart* v. *Superior Court, supra,* 19 Cal.4th at p. 1170, fn. 31.) These
issues have been properly presented here. We find no equal protection
violation regarding them.

 The constitutional guaranty of equal protection of the laws means
simply that persons similarly situated with respect to the purpose of the law
must be similarly treated under the law. (*In re Gary W.* (1971) 5 Cal.3d 296,
303 [96 Cal.Rptr. 1, 486 P.2d 1201]; *People* v. *Carter* (1994) 30 Cal.App.4th
775, 778 [37 Cal.Rptr.2d 59]; *People* v. *Gibson* (1988) 204 Cal.App.3d 1425,
1436 [252 Cal.Rptr. 56] (*Gibson*).) If persons are not similarly situated for
purposes of the law, an equal protection claim fails at the threshold. (*Gibson,
supra,* 204 Cal.App.3d at p. 1436.) The question is not whether persons are
similarly situated for all purposes, but "whether they are similarly situated
for purposes of the law challenged." (*Id.* at p. 1438.)

A legislature may distinguish between persons or groups in passing
legislation. In ordinary equal protection cases not involving suspect classi-
fications (such as race) or the alleged infringement of a fundamental interest
(such as the right to vote or to pursue a lawful occupation), these legislative
distinctions are upheld if they have a rational relationship to a legitimate
state purpose. (*Weber* v. *City Council* (1973) 9 Cal.3d 950, 958-959 [109
Cal.Rptr. 553, 513 P.2d 601].) If the distinction, however, involves a suspect

classification or infringes on a fundamental interest, it is strictly scrutinized and is upheld only if it is necessary to further a compelling state interest. (*Ibid.*) ██ Strict scrutiny is the correct standard of review in California for disparate involuntary civil commitment schemes because liberty is a fundamental interest. (*Hofferber, supra,* 28 Cal.3d at p. 171, fn. 8; *Hubbart* v. *Superior Court, supra,* 19 Cal.4th at p. 1153, fn. 20.)

· With these general principles in mind, we turn to the three equal protection issues.[2]

### (i) *Less Severe Mental Disorder Definition*

██ Buffington argues that California's civil commitment statutes uniformly require a degree of mental impairment that is more severe than the SVPA's definition of mental disorder. He notes that personality and adjustment disorders are expressly excluded from both the mentally disordered offender (MDO) commitment scheme (Pen. Code, § 2962, subd. (a)) and the not guilty by reason of insanity defense (Pen. Code, § 25.5). The SVPA, Buffington notes, contains no such exclusion. This difference, Buffington maintains, allows SVP's to be committed based on a less severe mental disorder than those committed under other civil commitment schemes. We disagree.[3]

We first resolve the threshold question of whether the SVP's are similarly situated for purposes of the law (i.e., for purposes of the mental disorder definition) to other persons involuntarily committed. We conclude they are. The SVP's and the other persons involuntarily committed are subject to commitment because they are currently suffering from a mental disorder that renders them dangerous. (See *Gibson, supra,* 204 Cal.App.3d at p. 1436 [an MDO is similarly situated to other adult persons involuntarily committed because "[o]ne purpose of all of these pertinent involuntary commitment schemes is the protection of the public from the dangerous mentally ill and their involuntary commitment for treatment . . . ."].)

Having found the SVP's similarly situated for purposes of the law, the next question is whether they are similarly treated for purposes of the law.

---

[2]As in *Hubbart,* there is no distinction made here between the federal and state Constitutions regarding these equal protection issues. (*Hubbart* v. *Superior Court, supra,* 19 Cal.4th at p. 1152, fn. 19.)

[3]In an ex post facto analysis, the court in *Gibson, supra,* 204 Cal.App.3d at page 1434, concluded that the MDO commitment scheme is "essentially penal in nature." The same court later retracted this view in light of *Hendricks,* and concluded that the scheme is civil. (*People* v. *Robinson* (1998) 63 Cal.App.4th 348, 350-352 [74 Cal.Rptr.2d 52].) The MDO Act and the SVPA are often compared for equal protection purposes because both deal with prisoners who have completed their sentences and who may be subject to involuntary confinement for mental health treatment. (See e.g., *Gibson, supra,* 204 Cal.App.3d at pp. 1436 & fn. 12, 1439; *Hubbart* v. *Superior Court, supra,* 19 Cal.4th at pp. 1143, fn. 4, 1168-1170.)

We find that they are. Consequently, there is no equal protection violation with respect to the nature of the mental impairment addressed by the SPVA.

An SVP must have "a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a).) A "diagnosed mental disorder" is defined as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).)

Under the MDO Act, the relevant term is "severe mental disorder." By reason of a "severe mental disorder," the person committed under the MDO Act must represent a "substantial danger of physical harm to others." (Pen. Code, § 2962, subd. (d)(1).) The term "severe mental disorder" is defined as "an illness or disease or condition that substantially impairs the person's thought, perception of reality, emotional process, or judgment; or which grossly impairs behavior; or that demonstrates evidence of an acute brain syndrome for which prompt remission, in the absence of treatment, is unlikely." (Pen. Code, § 2962, subd. (a).) "Severe mental disorder" does not include "a personality or adjustment disorder." (*Ibid.*)

Similar to the SVPA and the MDO scheme, a person committed for an extended period under the Lanterman-Petris-Short (LPS) Act (§ 5000 et seq.) (California's general civil commitment statute) must present, "as a result of mental disorder or mental defect, . . . a demonstrated danger of inflicting substantial physical harm upon others." (§ 5300; see also § 5304.)

The key consideration for equal protection analysis on the issue of mental disorder standards is not the particular nomenclature or diagnosis of the mental disorder. (See *Hendricks, supra,* 521 U.S. at pp. 358-359 [117 S.Ct. at pp. 2080-2081, 138 L.Ed.2d at p. 513]; see also *People* v. *Butler* (1998) 68 Cal.App.4th 421, 441-442 [80 Cal.Rptr.2d 357].) The key, rather, is that the person whose commitment is sought must be currently suffering from a mental condition that renders him dangerous beyond his control. (See *Hendricks, supra,* 521 U.S. at pp. 356-361 [117 S.Ct. at pp. 2079-2081, 138 L.Ed.2d at pp. 512-514]; see also *Butler, supra,* 68 Cal.App.4th at pp. 441-442.)

The definitions of "mental disorder" and "mental defect" in the California involuntary commitment schemes noted above, including the SVPA, all similarly encompass a current mental condition that renders a person dangerous beyond his or her control. Thus, SVP's are treated similarly for these purposes of the law.

Though made in the context of a due process challenge, an argument similar to Buffington's was rejected in *Hendricks*. The defendant there argued that although the Kansas SVP statute required a "mental abnormality" or a "personality disorder," the Supreme Court's earlier cases had required a "mental illness," and "mental abnormality" did not satisfy this requirement. The *Hendricks* court disagreed; the court noted that the term "mental illness" does not have "any talismanic significance," and concluded that the Kansas statute's definition of "mental abnormality" (a definition almost identical to the SVPA's definition of a "diagnosed mental disorder"; § 6600, subd. (c)) set forth "criteria relating to an individual's inability to control his dangerousness." (521 U.S. at p. 360 [117 S.Ct. at p. 2081, 138 L.Ed.2d at pp. 513-514]; *Hubbart* v. *Superior Court, supra,* 19 Cal.4th at pp. 1157-1158.) These criteria were comparable to the criteria set forth in other civil commitment statutes the court had approved. (*Hendricks, supra,* 521 U.S. at pp. 356-361 [117 S.Ct. at pp. 2079-2081, 138 L.Ed.2d at pp. 512-514].)

Equal protection does not require that "personality or adjustment disorders" be excluded from the SVP mental disorder standard simply because they are excluded from the MDO standard. (Pen. Code, § 2962, subd. (a).) Equal protection requires that where persons committed under the two schemes are similarly situated for purposes of the law, they be similarly treated. As we have seen, persons committed under the SVPA and the MDO scheme (as well as other similar California civil commitment schemes) are similarly situated for purposes of defining the triggering mental disorder; those persons are similarly treated because the triggering mental disorder is defined as a current and recognized mental condition rendering those committed dangerous beyond their control.

However, this is not to say that persons committed under California's various civil commitment statutes are similarly situated in all respects. They are not. For example, the SVPA restricts commitments to those who have committed sexually violent offenses and who have the propensity due to their mental disorder to commit further acts of sexual violence. The MDO scheme restricts commitments to felons who are violent because of their mental disorder and who remain a danger because of that disorder. "[T]he [L]egislature is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest." (*Minnesota* v. *Probate Court* (1940) 309 U.S. 270, 275 [60 S.Ct. 523, 526, 84 L.Ed. 744, 750, 126 A.L.R. 530].) The Legislature "may adopt more than one procedure for isolating, treating, and restraining dangerous persons; and differences will be upheld if justified." (*Hofferber, supra,* 28 Cal.3d at p. 172.) In line with these equal protection principles that sanction

certain differences in degree, the Legislature has not acted unconstitutionally by failing to exclude personality or adjustment disorders from the SVPA's definition of "diagnosed mental disorder"; indeed, the Kansas SVP Act's definition of mental disorder at issue in *Hendricks* expressly included "personality disorder" without violating constitutional principles. The definition of "mental disorder" under both the SVPA and the MDO Act still rests on a similar foundation for equal protection purposes.

### (ii) *Reduced Evidentiary Requirements*

Buffington contends that the SVPA's evidentiary requirements for determining who is suffering from a mental disorder and who is likely to reoffend are unconstitutional because they are lower than other civil commitment schemes. Buffington argues that the SVPA does not require "any recent objective basis for a finding that an inmate is likely to reoffend." No current psychological symptoms are needed and no recent overt act is required, Buffington asserts.

In contrast, Buffington notes, the MDO Act enforces its requirements of current mental illness and present dangerousness through its detailed definitions of "remission" which require recent objective indicia of the defendant's condition. An MDO finding that an individual "cannot be kept in remission without treatment," Buffington notes, requires a showing that the individual has engaged in violent or threatening conduct or an intentional failure to follow the treatment plan within the preceding year. (Pen. Code, § 2962, subd. (a).) Buffington notes there is no such requirement in the SVPA.

Similarly, Buffington maintains, the LPS Act requires substantial evidentiary considerations before imposing a long-term commitment. It is not enough that an individual present a demonstrated danger of inflicting harm as a result of a mental disorder, Buffington argues. Those committed must have undertaken certain acts or made recent threats of physical harm to others. (§ 5304.) This requirement, Buffington contends, ensures that individuals objectively are a danger.

Since the underlying issue is again whether the person to be committed is currently suffering from a mental disorder which makes him dangerous beyond his control, we will assume that those committed under the MDO Act, the LPS Act and the SVPA are similarly situated for these purposes. Have they been similarly treated to satisfy equal protection? We conclude they have.

Buffington's focus is that the SVPA does not contain, in contrast to California's other civil commitment schemes, "any recent objective indicia

of the defendant's condition" or "any recent objective basis for a finding that an inmate is likely to reoffend." We disagree.

The process for determining whether a convicted sex offender is an SVP (including whether he has a diagnosed mental disorder that makes him a danger to the health and safety of others in that it is likely that he will engage in sexually violent criminal behavior [§ 6600, subd. (a)]) takes place in several stages, both administrative and judicial. (*Hubbart* v. *Superior Court, supra,* 19 Cal.4th p. 1145.)

. Administratively, the Department of Corrections initially conducts a screening pursuant to a "structured screening instrument" developed in conjunction with the Department of Mental Health. (§ 6601, subds. (a), (b).) If that screening shows the inmate is likely to be an SVP, he is referred to the Department of Mental Health for a "full evaluation" as to whether he meets the criteria in section 6600. (§ 6601, subd. (b).)

"The [full] evaluation performed by the Department of Mental Health must be conducted by at least two practicing psychiatrists or psychologists in accordance with a standardized assessment protocol. (§ 6601, subds. (c) & (d).) 'The standardized assessment protocol . . . require[s] assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders. Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder.' (*Id.,* subd. (c).)" (*Hubbart* v. *Superior Court, supra,* 19 Cal.4th at p. 1146.)

"Two evaluators must agree that the inmate *is* mentally disordered and dangerous within the meaning of section 6600 in order for proceedings to go forward under the [SVPA]. (§ 6601, subd. (d).) In such cases, the Department of Mental Health transmits a request for a petition for commitment to the county in which the alleged SVP was last convicted, providing copies of the psychiatric evaluations and any other supporting documentation. (*Id.,* subds. (d), (h) & (i).) 'If the county's designated counsel concurs with the recommendation, a petition for commitment shall be filed in the superior court . . . .' (*Id.,* subd. (i).)" (*Hubbart* v. *Superior Court, supra,* 19 Cal.4th at p. 1146, italics added, fn. omitted.)

The filing of the petition triggers the judicial round of proceedings under the SVPA. These proceedings start with a "probable cause" hearing; if that hurdle is cleared, the proceedings end with a full-blown trial as to whether the requirements for classification as an SVP have been established "beyond a reasonable doubt." (§§ 6602, 6604; *Hubbart* v. *Superior Court, supra,* 19 Cal.4th at pp. 1146-1147.)

In light of these provisions, we conclude the SVPA requires "recent objective indicia of the defendant's condition" and a "recent objective basis for a finding that an inmate is likely to reoffend." The SVPA sets forth a comprehensive administrative process for screening and evaluation, requiring professional assessments of various diagnoses and specified risk factors; it then subjects these assessments to a thorough judicial process, including a trial under the standard of proof of beyond a reasonable doubt. Contrary to Buffington's claim, "current psychological symptoms are needed" to establish that a person is an SVP. (§§ 6600, subds. (a), (c), 6601, subds. (b), (c).)

In citing the MDO and the LPS Acts, Buffington also notes that "[n]o recent overt act is required" under the SVPA in making a finding that an inmate is likely to reoffend.

To be committed under the MDO Act, a prisoner, by reason of a "severe mental disorder" must represent a "substantial danger of physical harm to others." (Pen. Code, § 2962, subd. (d)(1).) However, the MDO Act expressly provides that a " 'substantial danger of physical harm' does not require proof of a recent overt act." (*Id.*, subd. (f).) The SVPA similarly states that " '[d]anger to the health and safety of others' does not require proof of a recent overt act while the offender is in custody." (Welf. & Inst. Code, § 6600, subd. (d).) Consequently, the two acts treat the issue similarly and there is no basis for an equal protection challenge in this regard.[4]

To receive an extended commitment under the LPS Act, a person, "as a result of mental disorder or mental defect, [must] present[] a demonstrated danger of inflicting substantial physical harm upon others"; *and* must have attempted, inflicted, or made a serious threat of substantial physical harm upon another after having been taken into custody for evaluation and treatment, *or must have attempted or inflicted physical harm upon another and that act resulted in his being taken into custody*, *or* must have expressed a

---

[4]The MDO requires that "by reason of his or her severe mental disorder the prisoner represents a substantial danger of physical harm to others." It also requires that the prisoner have a "severe mental disorder that is not in remission *or* cannot be kept in remission without treatment." (Pen. Code, § 2962, subds. (d)(1) and (a), italics and underline added.) The option of "cannot be kept in remission without treatment" requires a further showing that the prisoner, within the preceding year, has engaged in violent or threatening conduct or has not voluntarily followed the treatment plan. (*Id.*, subd. (a).) An SVP, however, is akin to an MDO whose severe mental disorder "is not in remission." This further showing for the "cannot be kept in remission" option is therefore irrelevant for equal protection purposes. An MDO receives treatment during his prison sentence pursuant to the MDO statutory scheme; an SVP is not treated similarly (we discuss this distinction in the next part of this opinion). (Pen. Code, §§ 2960, 2962, subds. (a), (c); Welf. & Inst. Code, § 6600.) The MDO Act considers, at least in part, past evaluations and treatment, while the SVPA exclusively considers the likelihood of future sexually violent criminal behavior without commitment.

serious threat of substantial physical harm upon another within seven days of being taken into custody and that threat at least in part resulted in his being taken into custody. (§§ 5300, subds. (a)-(c), 5304, subd. (a)(1), (2), (3).) These code sections make clear that a recent overt act of violence is unnecessary for an LPS commitment where a confinement resulted from the commission of a violent act (under the SVPA, an SVP generally must have been convicted of a sexually violent offense against two or more victims for which he or she received a sentence [§ 6600, subd. (a)], and Buffington was so convicted and sentenced). Thus, the alleged difference between those committed long-term under the LPS Act and those committed under the SVPA, as it pertains to a recent overt act, does not exist. (See *Martin, supra,* 107 Cal.App.3d at p. 726 [undertaking a similar comparative analysis of the LPS Act and the MDSO Act].) Consequently, there is no equal protection denial in this regard either.

### (iii) *Less Treatment for SVP Mental Disorders*

Buffington notes that the MDO Act requires prison authorities to "evaluate each prisoner for severe mental disorders during the first year of the prisoner's sentence" and to provide treatment while in prison. (Pen. Code, § 2960.) An MDO commitment can occur only if the inmate "has been in treatment for the severe mental disorder for 90 days or more within the year prior to the prisoner's parole or release." (Pen. Code, § 2962, subd. (c).) The LPS Act, Buffington adds, also requires specific treatment before an extended commitment may be imposed.

The SVPA, argues Buffington, contains no comparable provisions for treating sex offenders' supposed mental disorders during their prison terms. The SVPA does not evaluate offenders for treatment until they have nearly completed their prison terms.

On the issue of comparative treatment while in prison, Buffington's rightful focus is on the MDO Act and the SVPA, since both schemes deal exclusively with prison inmates who have completed their sentences and who may be subject to involuntary confinement for mental health treatment. We do not find, however, that these two groups are similarly situated for equal protection purposes regarding treatment. Consequently, this equal protection challenge fails at the threshold.

Involuntary commitment under the MDO Act is directly related to the crime for which the defendant was incarcerated. (Pen. Code, §§ 2960, 2962, subd. (b).) The "severe mental disorder" of an MDO must be a cause or an aggravating factor of the violent crime for which the prisoner was sentenced

to prison. (Pen. Code, § 2962, subds. (b), (e).) The "diagnosed mental disorder" of an SVP, by contrast, need not have contributed to the prior "sexually violent offense." (Welf. & Inst. Code, § 6600.) The MDO Act considers, at least in part, past evaluation and treatment, while the SVPA considers only the likelihood of future sexually violent criminal behavior without commitment. (Pen. Code, § 2962; Welf. & Inst. Code, § 6600.) Prisoners who suffer from conditions that may with treatment be kept in remission are the target of the MDO Act, whereas the SVPA covers prisoners whose conditions pose a risk of future sexually violent criminal behavior and who may never be completely treated. (Pen. Code, § 2962; Welf. & Inst. Code, § 6606, subd. (b).) Given these contrasting backgrounds and expectations related to treatment, we cannot say the two groups are similarly situated in this respect for equal protection purposes.

Buffington also notes that an SVPA commitment does not require "[a]menability to treatment," and that it is not necessary that SVP treatment even be "potentially successful." (§ 6606, subd. (b).)[5] Buffington claims that treatment under the SVPA is of secondary importance, that it is required only for confinement purposes and only after prisoners have been subject to penal conditions, and that this is far different than other civil commitment schemes. We disagree.

Treatment is an integral part of the SVPA. The Department of Mental Health must "afford the [SVP] with treatment for his or her diagnosed mental disorder." (§ 6606, subd. (a).) "This treatment obligation exists even where the chance of success in a particular case is low." (*Hubbart* v. *Superior Court, supra,* 19 Cal.4th at pp. 1148-1149, citing § 6606, subd. (b).) The Legislature stated it intended with the SVPA to establish a nonpunitive, civil commitment scheme covering persons who are to be viewed, "not as criminals, but as sick persons." (§ 6250; see Stats. 1995, ch. 763, §§ 1, 2.) As our high court noted in *Hubbart:* "Section 6606, subdivision (b) is not inconsistent with these therapeutic aims insofar as it states that commitment under the [SVPA] does not require '[a]menability to treatment' or similar findings. This provision appears to stand for the unremarkable proposition that some mentally disordered and dangerous persons might not benefit from treatment for a variety of reasons, and that commitment is not foreclosed in those cases." (19 Cal.4th at p. 1167.)

*Hubbart* also recognized that provisions containing language identical to section 6606, subdivision (b), have appeared in other California civil commitment schemes, noting that amenability to treatment is not required for

---

[5]Section 6606, subdivision (b) states: "Amenability to treatment is not required for a finding that any person is a person described in Section 6600 [i.e., an SVP], nor is it required for treatment of that person. Treatment does not mean that the treatment be successful or potentially successful, nor does it mean that the person must recognize his or her problem and willingly participate in the treatment program."

extended commitment under the LPS Act or the MDSO Act. (*Hubbart* v. *Superior Court, supra,* 19 Cal.4th at p. 1167.) This recognition counters Buffington's claim that the SVPA's stance on amenability to treatment is far different than that taken in other civil commitment schemes.

California's involuntary civil commitment schemes are founded on the "compelling interests in public safety and in humane treatment of the mentally disturbed." (*Hofferber, supra,* 28 Cal.3d at p. 171; see also *Gibson, supra,* 204 Cal.App.3d at p. 1436; *Martin, supra,* 107 Cal.App.3d at p. 725.) The SVPA encompasses these compelling interests. (*Hubbart* v. *Superior Court, supra,* 19 Cal.4th at p. 1144.) The state's interest in protecting its citizens from violent predators is no less legitimate and compelling—and arguably is even greater—when treatment is problematic. Constitutionally requiring a finding of "amenability to treatment" would have the absurd result of conditioning commitment on the person's willingness or refusal to participate in treatment. Along these lines, the court in *Hubbart* quoted the following passage from *Hendricks:* " '[W]e have never held that the Constitution prevents a State from civilly detaining those for whom no treatment is available, but who nevertheless pose a danger to others. . . . To conclude otherwise would obligate a State to release certain confined individuals who were both mentally ill and dangerous simply because they could not be successfully treated for their afflictions.' " (*Hubbart* v. *Superior Court, supra,* 19 Cal.4th at pp. 1165-1166, quoting *Hendricks, supra,* 521 U.S. at p. 366 [117 S.Ct. at p. 2084, 138 L.Ed.2d at pp. 517-518].)

We find no equal protection violations regarding how the SVPA provides treatment.

### DISPOSITION

The order of commitment is affirmed.

Raye, J., and Callahan, J., concurred.