120 Cal.Rptr.2d 11 (2002)
98 Cal.App.4th 642
The PEOPLE, Plaintiff and Respondent,
v.
Robert WILLIAMS, Defendant and Appellant.
No. E030384.
Court of Appeal, Fourth District, Division Two.
April 22, 2002.
As Modified May 20, 2002.
Review Granted July 17, 2002.
*12 Gerald J. Miller, Los Angeles, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Senior Assistant Attorney General, Bradley A. Weinreb and Janelle Boustany, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
WARD, J.
A jury found that defendant and appellant Robert Williams is a sexually violent predator within the meaning of Welfare and Institutions Code section 6600 (the Sexually Violent Predators Act).[1] The *13 court ordered defendant committed to Atascadero State Hospital for a period of two years, beginning on September 13, 2001. On appeal, defendant contends that the order of commitment should be reversed because the trial court erred in refusing to instruct the jury that defendant's mental disorder must render him unable to control his dangerous behavior. Defendant argues that a finding of a defendant's absolute inability to control his or her behavior was constitutionally required in order to commit defendant under the Sexually Violent Predators Act (the SVP Act). We affirm the order.

FACTUAL BACKGROUND
Defendant was convicted of raping three women. The first incident occurred on January 22, 1981, when defendant initiated a conversation with a woman in a laundromat, left the laundromat, and later returned and masturbated in front of her. Defendant then grabbed the woman. She ran out of the laundromat and fell. Defendant then dragged her to a nearby park and raped her. Defendant was still raping her when the police arrived, and the police had to remove defendant from on top of her.
The second incident occurred on June 6, 1981, at a stadium. Defendant was attending a concert and began touching the woman sitting in front of him. At one point, the woman left to use the restroom. While she was looking for the women's restroom, defendant grabbed her and dragged her into a men's restroom. He took her into a stall that had an "out of order" sign on it, beat her, tore her clothes off, and raped her. The victim then escaped and notified the authorities, who apprehended defendant.
Defendant was convicted of rape with respect to the first two incidents and served time in state prison. He was released on parole, and then about three months later, on March 21, 1987, he committed another rape. Defendant went to the house across the street from where he was staying, knocked on the door, and told the woman who answered that he was having car trouble. He asked if he could use her telephone. The woman let him into her house, and left defendant in the living room to make the call in private. The woman then came back into the living room, but defendant told her the line was busy. The woman left the living room and went into the bedroom. Defendant followed her and shut the bedroom door. He told her that he had been watching her, and then, according to the information, "informed the victim of his intentions." The woman told defendant to leave, but he just laughed at her. She tried to fight him off, but he pushed her down and raped her. After defendant left, she called the police. While waiting for the police to arrive, defendant came back to her house two more times, trying to retrieve his glasses, which he had left inside her house.
Defendant was convicted of three countsrape, sexual battery, and residential burglaryfor the third incident. He was sentenced to state prison for 21 years and was approaching possible release in April 1999, when two psychologists, Dr. Dennis Sheppard and Dr. Kent Franks, were appointed to evaluate him. Both doctors concluded that defendant suffered from a mental disorder.
At trial, Dr. Sheppard testified that he had diagnosed defendant as having "paraphilia not otherwise specified to involve nonconsenting persons and exhibitionism." He explained that paraphilia is a mental disorder which includes a broad range of sexual disorders, such as pedophilia (sexual attraction to children). He explained *14 that paraphilia "not otherwise specified" (NOS) is a category that simply refers to a diagnosis that "does not have any specific diagnosis like pedophilia." In defendant's case, the NOS category referred to nonconsenting persons. Dr. Sheppard explained that the rapes committed by defendant were paraphilic in nature because they involved crimes of opportunity rather than being planned, and they involved obsessive and uncontrollable rapes that he felt driven to commit. Dr. Sheppard noted defendant's own statement that defendant felt like he had no control over his sexual drive.
Dr. Franks arrived at a similar diagnosis. He concluded that defendant had paraphilia NOS, as well as a "personality disorder not otherwise specified with schizotypal and antisocial features." As to the paraphilia, Dr. Franks also testified that the nature of defendant's illness was that he was aroused by having sex with nonconsenting people.
Both doctors determined that defendant met the three criteria of a sexually violent predator: (1) he had committed two or more predatory offenses against victims; (2) he had a diagnosable mental disorder that predisposed him to committing criminal sexual acts; and (3) he was likely to engage in future episodes of sexually violent criminal behavior. The jury found that defendant was a sexually violent predator (SVP), pursuant to section 6600. The court ordered him to be committed for two years. Defendant now appeals.

ANALYSIS

1. Defendant Has Failed to Show That the Trial Court Erred in Refusing the Requested Jury Instruction
Defendant requested that the trial court give the jury the following special instruction: "The diagnosed mental disorder must render the person unable to control his dangerous behavior." The court refused to give the instruction because it was not convinced that the instruction would assist the jury. Defendant now contends that we should reverse the trial court's order committing him under the SVP Act because the trial court erred in refusing to instruct the jury. Defendant argues that both the United States and California Supreme Courts have held that the finding of a person's inability to control his dangerous behavior is a necessary element for a constitutionally valid order of commitment. We disagree.
Section 6600, subdivision (a) provides that an SVP is "a person who has been convicted of a sexually violent offense against two or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." A "diagnosed mental disorder" is defined as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others."[2]
"[C]ommitment under the Act has two essential requirements: first, two or more convictions which qualify as sexually violent offenses; and, second, a diagnosable mental disorder which renders the defendant dangerous to others at the time of commitment."[3] Defendant argues that "[i]n addition to the statutory elements set forth above, the United States and California Supreme Courts have made clear that, *15 to pass constitutional muster, an act providing for the commitment of SVPs must additionally require that the People affirmatively demonstrate that the alleged SVP is incapable of controlling his or her sexually violent behavior." (Underscore in original.)
Defendant's proposed instruction would have required the jury to find that he was currently "unable to control his dangerous behavior." In other words, defendant's instruction would have advised the jury that, unless it found defendant incapable of controlling his dangerous behavior, he could not be civilly committed under the SVP Act.
Contrary to defendant's claim, the United States Supreme Court in Kansas v. Crane[4] recently made clear that proof of absolute lack of control is not the standard required for a civil commitment. In Crane, the Supreme Court concluded that a "lack-of-control determination" is necessary prior to commitment, but the applicable lack-of-control standard is "proof of serious difficulty in controlling behavior."[5] The Court reaffirmed its language in Kansas v. Hendricks,[6] in which the Court found that the Kansas SVP Act (which is similar in language to the California SVP Act) required that it would be "difficult, if not impossible" to control dangerous behavior.[7] The Supreme Court also noted that "[t]he word `difficult' indicates that the lack of control to which this Court referred [to in Hendricks ] was not absolute." [8] Moreover, the Supreme Court stated that "[insistence upon absolute lack of control would risk barring the civil commitment of highly dangerous persons suffering severe mental abnormalities."[9] The particular instruction that defendant requested went beyond requiring volitional impairment and would have required that the defendant be "unable to control his dangerous behavior." Complete lack of control is an incredibly high standard and one that neither Crane nor Hendricks support.
The jury here was properly and adequately instructed in the language of the SVP Act. The jury was instructed that "[t]he term `sexually violent predator' means a person who, (1) has been convicted of a sexually violent offense against two or more victims, and (2) has a currently diagnosed mental disorder that makes him a danger to the health and safety of others in that it is likely that he will engage in sexually violent criminal behavior." The jury was also instructed with a definition of "diagnosed mental disorder" in the exact language of the SVP Act. Section 6600, subdivision (c) describes "the requisite mental disorder as a `congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others.' " Section 6600, subdivision (c), specifically requires that the diagnosed mental disorder "affect[] the emotional or volitional capacity" to the extent that a person is "predispos[ed] ... to the commission of criminal sexual acts in a degree constituting the person a menace to the health and *16 safety of others." This language clearly presumes a serious difficulty in controlling behavior: if a person cannot control his dangerous behavior to the extent that he is predisposed to commit criminal sexual acts and thus becomes a menace to others, he has sufficient volitional impairment to be found an SVP.
Defendant argues that People v. Ward,[10]People v. Buffington,[11]Hubbart v. Superior Court[12] support his entitlement to the proposed instruction. In Ward, the trial court instructed the jury using an instruction similar to the one that defendant requested.[13] The propriety of that instruction was not at issue on appeal and, hence, the appellate court decision cannot be construed as an endorsement of the instruction.[14] In Buffington, the court acknowledged that "the person whose commitment is sought must be currently suffering from a mental condition that renders him dangerous beyond his control. [Citations.]"[15] However, the court recognized that the definition of "mental disorder" in the SVP Act "encompass[es] a current mental condition that renders a person dangerous beyond his or her control."[16] Thus, Buffington concluded, as we do, that in identifying the relevant criteria, the language of the statute sufficiently expresses the requirement of diminished ability to control behavior.
In Hubbart, the defendant argued that the SVP Act was unconstitutional in that it violates due process, equal protection, and ex post facto laws. In holding that the SVP Act was not unconstitutional, the Supreme Court referred to "the present inability to control sexually violent behavior" [17] and "an inability to control dangerous conduct." [18] However, the degree of inability required to qualify a person under the SVP Act was not at issue and was not defined in Hubbart. Thus, Hubbart does not support defendant's entitlement to the requested instruction.[19]
"A defendant is not entitled to have the jury instructed in any particular terms if the instruction given adequately conveys the correct rule of law."[20] Here, by instructing the jury in the language of the SVP Act, the trial court instructed the jury that defendant must suffer from an emotional or volitional impairment that predisposes him to commit criminal sexual acts. This instruction adequately conveyed to the jury the requirement that defendant *17 must have an impaired ability to control his behavior. Thus, the trial court properly refused the requested instruction.

II. Any Error in Refusing to Instruct the Jury Concerning Defendant's Inability to Control His Dangerous Behavior Was Harmless
Assuming, without deciding, that the court erred by not giving the requested jury instruction, any error was harmless. Although this was not a criminal trial, the People had to prove that defendant was a SVP beyond a reasonable doubt. Instructional error regarding the omission of a single element is analyzed under the harmless error standard of Chapman v. California.[21]
Here, it appears beyond a reasonable doubt that the instructional omission did not prejudicially affect the verdict. As to the state of the evidence, the record clearly shows that defendant has serious difficulty controlling his sexual behavior. At trial, Dr. Sheppard noted that the two main indicators of defendant's disorder were: (1) defendant's continued behavior of open masturbation or exposing himself; and (2) defendant's own acknowledgment that he had no control. The record shows that defendant had five disciplinary incidents of exposing himself while he was in prison, and another six instances at Atascadero State Hospital, within a three month period. Dr. Franks testified that defendant stated that during the three months in the hospital, when defendant was repeatedly exposing himself, he could not control it. Dr. Franks stated that defendant "used the quote `I am like a fish on a hook' in reference to his impulse control meaning that like a fish on the hook, there was nothing he [could] do about it. He was just controlled by these impulses." Moreover, Dr. Franks opined that the most significant risk factor in terms of defendant reoffending was that "he [had] very poor control over his impulses and he [had] very poor control over his emotional functioning."
Furthermore, at trial, Dr. Sheppard was asked to explain the definition of a diagnosed mental disorder, as provided in section 6600, subdivision (c), which states that "`[d]iagnosed mental disorder' includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts...." Dr. Sheppard stated that he believed the law includes people who "can't control themselves or that theythey can't keep from sexually offending...."
Given the strong, and essentially uncontested, evidence of defendant's lack of control over his sexual behavior, no reasonable trier of fact would have been misled by the omission of the requested jury instruction or could have come to a conclusion more favorable to defendant had such an instruction been given. Any error in refusing the requested instruction was harmless in that it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." [22]

DISPOSITION
The order of commitment is affirmed.
We concur: RAMIREZ, P.J., and McKINSTER, J.
NOTES
[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise specified.
[2] Section 6600, subdivision (c).
[3] People v. Superior Court (Howard) (1999) 70 Cal.App.4th 136, 151, 82 Cal.Rptr.2d 481.
[4] Kansas v. Crane (2002) 534 U.S. 407, 122 S.Ct. 867, 870, 151 L.Ed.2d 856.
[5] Kansas v. Crane, supra, 534 U.S. 407, 122 S.Ct. 867, 870, 151 L.Ed.2d 856.
[6] Kansas v. Hendricks (1997) 521 U.S. 346, 358, 117 S.Ct. 2072, 138 L.Ed.2d 501.
[7] Kansas v. Crane, supra, 534 U.S. 407, 122 S.Ct. 867, 870, 151 L.Ed.2d 856.
[8] Kansas v. Crane, supra, 534 U.S. 407, 122 S.Ct. 867, 870, 151 L.Ed.2d 856.
[9] Kansas v. Crane, supra, 534 U.S. 407, 122 S.Ct. 867, 870, 151 L.Ed.2d 856.
[10] People v. Ward (1999) 71 Cal.App.4th 368, 83 Cal.Rptr.2d 828.
[11] People v. Buffington (1999) 74 Cal.App.4th 1149, 88 Cal.Rptr.2d 696.
[12] Hubbart v. Superior Court, supra, 19 Cal.4th 1138, 81 Cal.Rptr.2d 492, 969 P.2d 584.
[13] People v. Ward, supra, 71 Cal.App.4th 368, 375, 83 Cal.Rptr.2d 828.
[14] Santisas v. Goodin (1998) 17 Cal.4th 599, 620, 71 Cal.Rptr.2d 830, 951 P.2d 399 ("An appellate decision is not authority for everything said in the court's opinion but only `for the points actually involved and actually decided.' ")
[15] People v. Buffington, supra, 74 Cal.App.4th 1149, 1157, 88 Cal.Rptr.2d 696.
[16] People v. Buffington, supra, 74 Cal.App.4th 1149, 1157, 88 Cal.Rptr.2d 696, italics added.
[17] Hubbart v. Superior Court, supra, 19 Cal.4th 1138, 1162, 81 Cal.Rptr.2d 492, 969 P.2d 584.
[18] Hubbart v. Superior Court, supra, 19 Cal.4th 1138, 1158, 81 Cal.Rptr.2d 492, 969 P.2d 584.
[19] Santisas v. Goodin, supra, 17 Cal.4th 599, 620; People v. Mendoza (2000) 23 Cal.4th 896, 915, 98 Cal.Rptr.2d 431, 4 P.3d 265.
[20] People v. Cox (1991) 53 Cal.3d 618, 674, 280 Cal.Rptr. 692, 809 P.2d 351.
[21] Chapman v. California (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705; People v. Flood (1998) 18 Cal.4th 470, 503-504, 76 Cal.Rptr.2d 180, 957 P.2d 869.
[22] Chapman v. California, supra, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705.