122 Cal.Rptr.2d 171 (2002)
99 Cal.App.4th 1303
The PEOPLE, Plaintiff and Respondent,
v.
Ross WOLLSCHLAGER, Defendant and Appellant.
No. B145828.
Court of Appeal, Second District, Division Six.
July 8, 2002.
As Modified on Denial of Rehearing August 6, 2002.
Review Granted October 16, 2002.
Jean F. Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Margaret E. Maxwell and Daniel Rogers, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]

OPINION ON REHEARING
GILBERT, P.J.
A person who, among other things, has "a diagnosed mental disorder that makes the person a danger to the health and *172 safety of others in that it is likely that he or she will engage in sexually violent criminal behavior" may be civilly committed under the Sexually Violent Predators Act (SVPA). (Well & Inst.Code, § 6600, subd. (a).)[1]
CALJIC No. 4.19 states in part, "The term `sexually violent predator' means a person who, (1) has been convicted of a sexually violent offense against two or more victims for which he or she received a [determinate] sentence, and (2) has a diagnosed mental disorder that makes him or her a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent [predatory] criminal behavior. [¶] ... [¶] `Diagnosed mental disorder' includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (CALJIC No. 4.19 (2002 rev.) (6th ed.1996 pocket pt.).)
Here we hold the language of the SVPA as stated in CALJIC No. 4.19 meets the constitutional requirement of Kansas v. Crane (2002) 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 Crane). A finding that a defendant qualifies as a sexually violent predator (SVP) under the terms of the statute necessarily means the defendant has serious difficulty in controlling his behavior.
Ross Wollschlager appeals the renewal of his commitment under the SVPA. We affirm.

FACTS

Facts Underlying Prior Convictions
On February 12, 1983, at approximately 3:15 a.m., the victim awoke to find a light in her eyes. Moments later, Wollschlager pulled up her nightgown, pulled down her panties and lay on top of her. The victim was half asleep and thought it was her husband. Her husband was sleeping in another bedroom in the house. Wollschlager forced his penis into the victim's vagina and ejaculated. He got up and left by the back door.
On the same morning, at approximately 5:30 a.m., another victim awoke to find Wollschlager orally copulating her. He then penetrated her vagina with his penis. Afterwards, he got up and left the house.
On October 20, 1989, at approximately 2:30 a.m., a 10-year-old girl awoke and saw Wollschlager standing over her bed with a lighted match. He blew out the match, pulled down the bed covers and touched the girl's thigh outside her clothes. She pushed his hand away. He touched her breast outside her tee-shirt and attempted to pull her tee-shirt up. She again pushed his hand away. He attempted to pull down her sweat pants but she resisted. He touched her genital area over her sweat pants. The victim's niece who was sleeping in the same room awoke to see Wollschlager attempt to kiss the victim on her lips. The victim's niece ran down the hall to her mother's room. While alone with the victim, Wollschlager attempted to roll her over, but she successfully resisted. Wollschlager put his knee on the bed as if attempting to get on top of the victim. He was interrupted when the victim's adult sister came into the room. Wollschlager ran past her and fled from the house.

[[/]][**]

Expert Testimony
Jill Nelson, Ph.D., is a staff psychologist at Atascadero State Hospital. She evaluated *173 Wollschlager to determine whether he was a SVP. Her evaluation was based on his hospital chart, previous psychological reports, a consultation with a member of Wollschlager's treatment team, arrest reports and probation reports. Wollschlager declined to be interviewed on advice of counsel.
Nelson diagnosed Wollschlager as having "paraphilia, NOS, non-consenting persons." She described paraphilia as a sexual disorder; the person has intense fantasies, urges or behaviors regarding some type of sexual object, such as children or non-consenting persons. Only rapists whose main focus is on the sexual aspect of his crimes would get such a diagnosis. She also diagnosed Wollschlager as suffering from voyeurism, poly-substance dependence and antisocial personality disorder.
In Nelson's opinion, Wollschlager's paraphilia and voyeurism affect his volitional capacity. He has repeatedly stated he knew his behavior is aberrant and he has been upset by what he has done. He tried to change his behavior, but has been unable to do so. Nelson believed that Wollschlager was likely to reoffend if released. She said he qualifies as an SVP.
Patrick Barker, Ph.D., performs court-appointed evaluations in criminal and mental health matters. He conducted three interviews with Wollschlager for a total of six hours. He diagnosed Wollschlager as suffering from paraphilia, voyeurism and antisocial personality. Barker said Wollschlager told him he used drugs to numb himself, that he disliked himself, and that the activities he engaged in were sick. Barker said paraphilia brings with it the inability to control one's self. A test administered by Barker indicated volitional impairment. Barker believed it was more likely than not that Wollschlager would reoffend if released.
Diane Imrem is a psychologist who works at Atascadero State Hospital and conducts SVP evaluations. Imrem relied on medical and psychiatric records, a probation report and consultation with doctors on Wollschlager's treatment team. Wollschlager declined an interview on the advice of his attorney.
Imrem diagnosed Wollschlager as suffering from paraphilia and voyeurism. She stated that although voyeurism would not itself be sufficient to qualify Wollschlager as an SVP, it affected his volitional capacity. Imrem concluded Wollschlager was likely to reoffend if released.

Defense
John Podboy, Ph.D., is a clinical and forensic psychologist. He interviewed Wollschlager extensively and reviewed his hospital records. He said the diagnosis of paraphilia and polysubstance abuse are not supported by current objective criteria. He viewed Wollschlager's criminal acts as volitional. He saw no evidence that Wollschlager is mentally ill or a risk to the community.
Wollschlager testified on his own behalf. He did not recall the details of the crimes that sent him to prison, but did not deny committing them. He blamed his criminal activities on drug and alcohol abuse. He is now participating in recovery programs. He believes he is more mature than when he committed his crimes and if released plans to obtain treatment for his problems.
A number of witnesses, including a psychiatric technician and a nurse employed at Atascadero State Hospital, testified as to Wollschlager's good character and behavior.

*174 DISCUSSION

[[/]][***]

VI
Wollschlager argues that none of the experts testified he lacked volitional control. Instead, prosecution experts testified that Wollschlager's mental illness affected his volitional control. He claims Kansas v. Hendricks (1997) 521 U.S. 346, 358, 117 S.Ct. 2072, 138 L.Ed.2d 501, 515 (Hendricks) stands for the proposition that the persons to be committed must suffer from "a volitional impairment rendering them dangerous beyond their control." But all Hendricks requires is that the mental disorder makes it "difficult" for the person to control his dangerous behavior. (Ibid.)
After we filed our opinion in this case, the United States Supreme Court decided Crane, supra, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856. We granted rehearing to determine what effect, if any, Crane has on this case. Crane reviewed a Kansas Supreme Court decision holding the Constitution requires an SVP commitment be based on proof a person lacks complete control. Crane rejected that standard and vacated the decision of the Kansas Supreme Court because it was "overly restrictive." Instead, Crane held it is sufficient to prove the offender has "serious difficulty in controlling behavior." (Id. at p.___, ___, 122 S.Ct. at pp. 868, 870, 151 L.Ed.2d at pp. 860, 862.)
The jury in this case determined Wollschlager has a "diagnosed mental disorder" that affects his "emotional or volitional capacity that predisposes [him] to the commission of criminal sexual acts" and makes him "likely [to] engage in sexually violent criminal behavior." (CALJIC No. 4.19.) But Wollschlager argues that the Crane decision requires that the jury be specifically instructed it must determine whether he has serious difficulty in controlling behavior.
Using language that embraces tradition over clarity, Crane ended its opinion by stating, "the judgment of the Kansas Supreme Court is vacated, and the case is remanded for further proceedings not inconsistent with this opinion." (Crane, supra, 534 U.S. at p. ___, 122 S.Ct. at p. 872, 151 L.Ed.2d at p. 864.) This familiarly broad directive more often leaves trial courts at sea than firmly anchored to a holding. But here the high court's instruction is clear as to what the trial court should not do on remand. It should not require the people to prove that the defendant suffers a complete lack of control over his criminal conduct. The Crane dissent complains that the trial court does not know what to do on remand because it has "not a clue" as to how to charge a jury. (Id. at p. ___, 122 S.Ct. at p. 876, 151 L.Ed.2d at p. 869.)
In our view the trial court needs no additional clues. To commit a defendant, there "must be proof of serious difficulty in controlling behavior." (Crane, supra, 534 U.S. at p. ___, 122 S.Ct. at p. 870, 151 L.Ed.2d at p. 862.) From this we conclude the trial court need do no more than the trial court did heresimply instruct in the words of the statute. But Justice Scalia launches his dissent with a different view of the holding. "Today the Court holds that the Kansas Sexually Violent Predator Act ... cannot, consistent with so-called substantive due process, be applied as written." (Id. at p. ___, 122 S.Ct. at p. 872, 151 L.Ed.2d at p. 864.) Our reading of the majority opinion confirms our belief *175 that it is good practice to regard a dissent's statement of the majority holding with circumspection.
The majority reaffirmed its holding in Hendricks that the Kansas Sexually Violent Predator Act is constitutional. The language of the Kansas act is nearly identical to California's SVPA. Crane noted that the Kansas act "`unambiguously requires a finding of dangerousness either to one's self or to others,' id. at 357, 117 S.Ct. 2072, 138 L.Ed.2d 501, and then `links that finding to the existence of a "mental abnormality" or "personality disorder" that makes it difficult, if not impossible, for the person to control his dangerous behavior,' id. at 358, 117 S.Ct. 2072, 138 L.Ed.2d 501 (citing Kan. Stat. Ann. § 59-29a02(b) (1994)). And the Court ultimately determined that the statute's `requirement of a "mental abnormality" or "personality disorder" is consistent with the requirements of ... other statutes that we have upheld in that it narrows the class of persons eligible for confinement to those who are unable to control their dangerousness.' 521 U.S. at 358, 117 S.Ct. 2072, 138 L.Ed.2d 501." (Crane, supra, 534 U.S. at p. ___, 122 S.Ct. at p. 869, 151 L.Ed.2d at pp. 860-861.)
The Crane dissent notes that under Hendricks, a jury in an SVPA commitment case had to find (1) that the defendant is suffering from a mental disorder which (2) renders him likely to commit future acts of sexual violence. But the dissent also argues that Crane now adds a third finding that the defendant "suffers from an inability to control behavior...." (Crane, supra, 534 U.S. at p. ___, 122 S.Ct. at p. 876, 151 L.Ed.2d at p. 869.) But this so-called third finding necessarily flows from the first two. Like the Kansas Supreme Court, which was "overly restrictive" in its interpretation of the Hendricks holding, the dissent in Crane is perhaps too restrictive in its view of the majority holding.
We agree with our colleagues in People v. Williams (2002) 98 Cal.App.4th 642, 648, 120 Cal.Rptr.2d 11, who concluded the language in our SVPA "clearly presumes a serious difficulty in controlling behavior: if a person cannot control his dangerous behavior to the extent that he is predisposed to commit criminal sexual acts and thus becomes a menace to others, he has sufficient volitional impairment to be found an SVP." Such a person is different than one who has a predisposition to commit crime, but chooses not to be law-abiding. Most residents of our prisons fall into this category.
Wollschlager argues the evidence does not support a finding of serious difficulty in controlling behavior. He points out that prosecution expert witnesses testified only his mental disorder "affected" his volitional capacity. But taken in context, expert testimony was that Wollschlager's mental disorder affects his volitional capacity to the extent that he is likely to reoffend. That is sufficient to support a finding of serious difficulty in controlling behavior. The jury would have reached the same conclusion had it been expressly instructed with the redundant language that it must determine whether Wollschlager has serious difficulty in controlling behavior.
Wollschlager complains that paraphilia is not even listed in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV). But Wollschlager cites no authority for the proposition that it must be listed in the DSM IV.

*176 [[/]][]
The judgment (order) is affirmed.
We concur: YEGAN and COFFEE, JJ.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].
[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.
[**] See footnote *, ante.
[***] See footnote *, ante.
[] See footnote *, ante.