In the Matter of the CARE and Treatment OF Larry L. COFFMAN.

Larry L. Coffman, Respondent/Respondent,

v.

State of Missouri, Petitioner/Appellant.

No. ED 80511.

Missouri Court of Appeals, Eastern District, Division Two.

Nov. 5, 2002.

---

4. The issue of the legality or propriety of this arrangement is not before us.

Nancy L. Vincent, Asst. Public Defender, Appellate/PCR Division, Eastern Dist., St. Louis, MO, for respondent.

Theodore A. Bruce, Assistant Attorney General, James R. Layton, Chief Deputy Attorney General, Jefferson City, MO, for appellant.

KATHIANNE KNAUP CRANE, Judge.

After a jury found respondent to be a sexually violent predator under Sections 632.480 through 632.513 RSMo (2000), the trial court ordered a new trial on the grounds that the verdict-directing instruc-

tion did not unambiguously inform the jury that the state was required to prove impairment of volition and the state did not adduce expert testimony on the issue. The state appeals. It argues that respondent's proffered verdict directors contained an improper standard and the verdict directors submitted to the jury contained the proper standard and were supported by the evidence. We agree that the grounds relied on by the trial court were erroneous. We have considered respondent's argument that the new trial order can be affirmed on the grounds that the subsequently decided case of *Thomas v. State*, 74 S.W.3d 789 (Mo. banc 2002) required a different definitional instruction, although that ground was not preserved. For the reasons set out herein, we conclude that we must consider *Thomas* and that *Thomas* requires a new trial with the definitional instruction set out therein. Accordingly, we affirm the order granting a new trial.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 22, 1985, respondent pleaded guilty to three counts of sodomy, in violation of Section 566.060, arising from the repeated sexual abuse of his children. He was sentenced to three consecutive five-year terms of imprisonment. He was subsequently placed on parole. After multiple parole violations, his parole was revoked and he was returned to prison to finish serving his sentence. Respondent's anticipated release date was August 7, 2000. On July 27, 2000, the state filed a petition to commit respondent to the Missouri Department of Mental Health pursuant to Missouri's sexual predator law, Sections 632.480 et seq. RSMo (2000).

The case was tried before a jury in August, 2001. At trial, the victims testified to their repeated abuse. Dr. Richard Scott, a licensed psychologist, testified to his opinion that respondent had two mental disorders which qualified as mental abnormalities, one of which was pedophilia. He defined pedophilia as "a mental disorder, in which a person has a recurrent pattern of interest in, arousal by, or behavior with prepubescent children that involves sexual contact or other sexually-related activities." He testified that pedophilia is a non-transient, continuing disorder which is not curable or outgrown. While pedophilia is not curable, treatment for pedophilia involves developing a relapse prevention plan, which can help pedophiles learn to control their behavior. To be successful, pedophiles must learn what motivates their actions and develop a relapse prevention plan in order to control their behavior. Respondent was twice terminated from the treatment phase of the Missouri Sex Offender Program. Dr. Scott testified that, although it was possible for respondent to learn enough about his behavior to control it, he found it very unlikely, because respondent had failed the opportunities he had been given for treatment. He testified that respondent also suffered from a personality disorder with antisocial and narcissistic features, which, combined with the pedophilia, made it more likely than not that he would commit acts of sexual violence if not kept in a secure facility. His repeated abuse of multiple victims of different ages and sexes over a twenty-year period, terminations from treatment, and his denial of any offenses increased the likelihood that he would reoffend.

At the jury instruction conference, the trial court refused the verdict directors submitted by the state and respondent. Instead, it submitted the following verdict director to the jury:

INSTRUCTION NO. 6

If you find and believe from the evidence beyond a reasonable doubt:

First, that the respondent pleaded guilty to sodomy in the Circuit Court of St. Louis City, State of Missouri, on July 22, 1985, and

Second, that the offense for which the respondent was convicted was a sexually violent offense, and

Third, that the respondent suffers from a mental abnormality, and

Fourth, that this mental abnormality makes the respondent more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure facility,

then you will find that the respondent is a sexually violent predator.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the respondent is not a sexually violent predator.

As used in this instruction, "sexually violent offense" includes the offense of sodomy.

As used in this instruction, "mental abnormality" means a congenital or acquired condition affecting the volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others

As used in this instruction, "predatory" means acts directed toward strangers or individuals with whom relationships have been established or promoted for the primary purpose of victimization.

The state's tendered verdict director, Instruction H, was similar to that given by the trial court[1] except that the definition of "mental abnormality" tracked the statutory definition found in Section 632.480(2) RSMo (2000) as follows:

As used in this instruction, "mental abnormality" means a congenital or acquired condition affecting the **emotional or** volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others.

(emphasis added). The court deleted the words "emotional or" in its instruction.

Respondent's tendered verdict director, Instruction G, contained a fifth element requiring the jury to find "that this mental abnormality impairs respondent's volitional capacity to such a degree that he is unable to control his sexually violent behavior." Respondent submitted the same definition of "mental abnormality" as did the state. The court indicated that it refused Instruction G because the court had eliminated the words "emotional or" in its definition of "mental abnormality," which it did based on its reading of *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).

The jury returned a verdict finding respondent to be a sexually violent predator. Respondent filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court granted the motion for a new trial on the grounds that its refusal to submit respondent's tendered Instruction G was error because the instruction given did not unambiguously inform the jury that the state

---

1. The elements in the state's and the court's verdict directors appear to be patterned on that used in *In re Crane*, 269 Kan. 578, 590, 7 P.3d 285, 293 (2000). Although the Kansas Supreme Court reversed the trial court in that case for failure to further instruct the jury on Crane's inability to control his behavior, the United States Supreme Court subsequently vacated the Kansas Supreme Court's opinion. *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). The definitions come from section 632.480 RSMo (2000).

was required to prove an impairment of volition. It also concluded that the absence of expert testimony that respondent's volition was impaired undermined its confidence that the jury in fact found this element.

## DISCUSSION

In its sole point on appeal, the state contends that the trial court erred in granting a new trial because the verdict director submitted to the jury satisfied due process and the instructions proffered by respondent improperly set forth the law of the case and added elements for the state to prove not required by the applicable statutes.

### Standard of Review

When we review a trial court's award of a new trial based on an erroneous instruction, we determine if the instruction is erroneous as a matter of law upon the record presented, not as a matter within the trial court's discretion. *Egenreither v. Carter*, 23 S.W.3d 641, 645 (Mo.App.2000). If the instruction was erroneous, then we consider whether it prejudiced the party challenging the instruction. *Wallace v. May*, 822 S.W.2d 471, 472 (Mo.App.1991). *See also Sloan v. Bankers Life & Cas. Co.*, 1 S.W.3d 555, 566 (Mo.App.1999); *Lashmet v. McQueary*, 954 S.W.2d 546, 549 (Mo.App.1997).

In its opening brief, the state argued that the trial court's reason for granting the new trial, because the jury was not instructed on respondent's tendered fifth element, was expressly rejected in *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). It further argued that the evidence of respondent's mental abnormality and his difficulty controlling his behavior was overwhelming and uncontroverted. In his brief, respondent argued that the trial court's new trial order can be affirmed on the basis that *Thomas*, handed down after the state filed its brief, requires the instruction defining "mental abnormality" to include language different from that given by the trial court. The state replied that the trial court's definition of mental abnormality placed a higher burden on the state than required by *Thomas* or *Crane*, and therefore *Thomas* does not require affirmance of the new trial order.

We will first take up the state's original argument and then address respondent's arguments.

### A. Failure to Include Fifth Element in Verdict Director

■ The trial court concluded that a new trial was required so that the jury could be given the instruction tendered by respondent that contained a fifth element, "that this mental abnormality impairs respondent's volitional capacity to such a degree that he is unable to control his sexually violent behavior." It read *Hendricks* to require that the statute be applied only to those who are unable to control their dangerousness. In *Hendricks*, the Supreme Court upheld the constitutionality of the Kansas civil commitment statute for sexually violent predators that limited its application to persons who had a mental illness that made it "difficult, if not impossible to control their dangerous behavior." 521 U.S. at 358, 117 S.Ct. at 2080. After *Hendricks*, state courts took different approaches to answering the question whether due process required a jury to make a specific finding that a sex offender lacks emotional or volitional control over his or her sexual behavior to support a commitment. Several state supreme courts held it did not. *See In re Detention of Varner*, 198 Ill.2d 78, 259 Ill.Dec. 780, 759 N.E.2d 560, 565 (2001); *In re Detention of Ewoldt*, 634 N.W.2d 622, 623–24 (Iowa 2001). In contrast, the

Kansas Supreme Court read *Hendricks* to require that "commitment under the act is unconstitutional absent a finding that the defendant cannot control his dangerous behavior." *In re Crane*, 269 Kan. 578, 585–86, 7 P.3d 285, 290 (2000).

However, after the trial in this case, the United States Supreme Court rejected the Kansas Supreme Court's requirement of a finding that a dangerous individual be completely unable to control his behavior. *Crane*, 534 U.S. at 412, 122 S.Ct. at 870. As *Crane* makes clear, the trial court erred in granting a new trial on the grounds that such an instruction was not given.

In addition, the trial court granted a new trial on the ground that expert evidence of the inability to control behavior was necessary. Because this conclusion was based on the presumption that complete inability to control behavior was the standard, it, too, cannot stand. The trial court erred in granting a new trial on the grounds that the jury should have been instructed to find that respondent was unable to control his behavior and that expert evidence was required to support that element.

B. *Existence of Alternative Ground for Affirmance*

Respondent argues, however, that the new trial order can be affirmed as a result of the intervening decision in *Thomas,* which was handed down by the Supreme Court of Missouri after the state filed its brief. In *Thomas,* the jury had found the two appellants to be sexual predators under Sections 634.480 *et seq.* pursuant to verdict directors that included the statutory definition of "mental abnormality:"

> As used in this instruction, "mental abnormality" means a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others.

*Thomas,* 74 S.W.3d at 790. The appellants challenged the validity of the verdict-directing instructions. The Missouri Supreme Court held that this question was controlled by *Hendricks* and *Crane,* in particular *Crane*'s holding that, where lack of control is at issue, "there must be proof of serious difficulty in controlling behavior" that, when viewed in light of other features of the case, such as the nature and severity of the mental abnormality, "must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." 534 U.S. at 413, 122 S.Ct. at 870. The Court did not establish a precise standard for determining the extent to which a sex offender must lack control before he could be found to have "serious difficulty in controlling behavior," but instead emphasized the flexibility each state retains in defining mental abnormalities that are sufficient for commitment. 534 U.S. at 413, 122 S.Ct at 871.

*Thomas* held that, to be constitutional under *Crane,* the mental abnormality instruction "must require that the 'degree' to which the person cannot control his behavior is 'serious difficulty.'" 74 S.W.3d at 791. The court held that, although there was sufficient evidence that the appellants had "serious difficulty" in controlling their behavior, the instructions did not so define "mental abnormality." 74 S.W.3d at 792. The court concluded that, to comply with *Crane,* the instruction defining "mental abnormality" must read as follows:

> As used in this instruction, "mental abnormality" means a congenital or acquired condition affecting the emotional

or volitional capacity that predisposes the person to commit sexually violent offenses in a degree *that causes the individual serious difficulty in controlling his behavior.*

*Id.* (Emphasis the court's). It reversed the judgments of commitment and remanded for new trials. *Id.*

### 1. *Preservation of Error*

■ Before we address the question of whether *Thomas* requires the new trial order to be affirmed, we first recognize that this issue has not been preserved under the rules applicable to new trial orders. As a general rule, even if a trial court erred in granting a new trial on the ground it specified, a respondent on appeal may seek to justify the grant of the motion on any other ground raised in the motion. *Benscoter v. Williams,* 600 S.W.2d 217, 221 (Mo.App.1980). The burden is on the respondent to demonstrate that another ground in the motion for new trial is sufficient to uphold the order. *Kuzuf v. Gebhardt,* 602 S.W.2d 446, 451 (Mo. banc 1980); *State ex rel. Sturm v. Allison,* 384 S.W.2d 544, 547–48 (Mo. banc 1964). *See also Silvey v. Missouri Pacific Railroad Company,* 445 S.W.2d 354, 361 (Mo.1969) (holding that this rule applies to additional errors in instructions). If the action can be sustained on any of the other grounds specified in the respondent's motion for new trial, we must affirm. *Laclede Inv. Corp. v. Kaiser,* 541 S.W.2d 330, 333 (Mo. App.1976); *Boswell v. Steel Haulers, Inc.,* 670 S.W.2d 906, 911 (Mo.App.1984). However, we will not consider any other ground relied upon to sustain the order if that ground has not been preserved in the record by objection and inclusion in the motion for new trial. *Overton v. Tesson,* 355 S.W.2d 909, 913 (Mo.1962). As a result, a respondent cannot have an erroneous new trial order sustained on the ground an erroneous instruction was given if the respondent did not object to the instruction or allege the error in the motion for new trial. *Id.* at 913–14. In particular, a respondent cannot have an erroneous new trial order sustained on the basis of an erroneous definitional instruction if the respondent did not object to the erroneous definition or submit a correct definition. *Burke v. Moyer,* 621 S.W.2d 75, 82 (Mo.App.1981).

Because the trial court's ground for granting the trial was erroneous, the burden shifted to respondent to show that there were other errors assigned in the motion for new trial that would justify the new trial. In this case, respondent does not rely on an alternative ground contained in his motion for new trial, but on a new ground, error in the definition of "mental abnormality." Respondent would ordinarily be precluded from relying on this ground because he failed to object to the definition of "mental abnormality" in the verdict director at trial, did not submit a correct definition, and did not assign the definition as error in the motion for new trial. *Overton,* 355 S.W.2d at 913–14; *Burke,* 621 S.W.2d at 82. In fact, respondent actually tendered an instruction containing the same error of which he now complains, which would ordinarily waive any objection thereto. *Layton v. Pendleton,* 864 S.W.2d 937, 941 (Mo.App.1993).

■ Error in an instruction must be preserved even if the authority for the error is not known until after trial. *Letz v. Turbomeca Engine Corp.,* 975 S.W.2d 155, 167–68 (Mo.App.1997); *Day v. Wells Fargo Guard Service Co.,* 711 S.W.2d 503, 507 (Mo. banc 1986). The rationale of these cases, which address preservation of error by an appellant, likewise applies to the determination of whether a respondent has preserved a ground to sustain a motion for a new trial. *See Erickson v. Sorenson,* 297 Minn. 452, 211 N.W.2d 883 (1973). Be-

cause respondent did not preserve error with respect to the definition of mental abnormality, he would ordinarily be precluded from relying on any such error to sustain the trial court's grant of a new trial.

 However, we are not unmindful of the fact that, had the trial court not granted the motion for new trial, respondent would have been able to appeal and raise the failure of the instruction to comply with *Thomas* as a matter of plain error. Further, "[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323, 330–31 (1979). Substantive due process requires a lack of control determination. *Crane,* 534 U.S. at 413, 122 S.Ct. at 870. Because *Crane* and *Thomas* set out new standards for due process and implicate respondent's fundamental rights, we can consider respondent's arguments based on *Crane* and *Thomas* even though not otherwise preserved. *State v. Conway,* 241 Mo. 271, 145 S.W. 441, 448 (1912); *State v. Hooker,* 791 S.W.2d 934, 938 (Mo. App.1990). Other jurisdictions with similar statutes have reviewed unpreserved arguments based on *Crane* in cases in which the trial concluded before *Crane* was decided. *See, In re Commitment of W.Z.,* 173 N.J. 109, 801 A.2d 205, 210 (2002); *In re Commitment of Laxton,* 254 Wis.2d 185, 647 N.W.2d 784, 794–95 (2002); *Converse v. Department of Children and Families,* 823 So.2d 295, 296 (Fla.App.2002). Accordingly, we review this question on the merits.

### 2. *Application of Thomas*

We are aware from our own files that, in cases on appeal in which the trial court gave the statutory definition of "mental abnormality" without modification, the state has conceded that the cases must be remanded for a new trial with the instruction mandated by *Thomas.* However, in this case the state argues that the deletion of the words "emotional or" from the definition of "mental abnormality" as used in the instructions required the state to prove complete lack of control, a burden higher than *Thomas* now requires, and therefore a new trial is not required. It argues that "volitional capacity" and total lack of control are synonymous. The state relies on *State v. Jackson,* 346 Mo. 474, 142 S.W.2d 45, 49 (1940) to argue that "volitional capacity refers to when a suspect because of mental illness [is unable] to resist the impulse to commit the criminal act." We do not so read *Jackson,* which referred to "volitional insanity," otherwise known as "irresistible impulse," and commented that it was not a defense recognized in Missouri. We cannot conclude that the phrase "a condition affecting the volitional capacity," would fairly convey to the jury the degree of lack of control that our supreme court has held must be explicit.

In this case, like *Thomas,* there was sufficient evidence to justify a finding of "serious difficulty" in controlling respondent's behavior. The Supreme Court has held that evidence of diagnosed pedophilia qualifies as a "mental abnormality" and is sufficient for due process purposes. *Hendricks,* 521 U.S. at 360, 117 S.Ct. at 2081; *Crane,* 534 U.S. at 413–14, 122 S.Ct. at 870–71. There was expert evidence that pedophiles need to develop a relapse prevention plan to control their behavior and that respondent's terminations from treatment made it highly unlikely that he could learn enough about his behavior to control it. However, *Thomas* directs that, even if there is sufficient evidence, if the issue is contested, a new trial is required if the jury was not given the definition of "mental abnormality" required by *Thomas.*

We have also considered *People v. Hancock*, 329 Ill.App.3d 367, 264 Ill.Dec. 755, 771 N.E.2d 459 (2002). In *Hancock*, the court held that *Crane* did not require the jury to make a lack of volitional control determination in every case. 264 Ill.Dec. 755, 771 N.E.2d at 465. It found that no determination was required in that case because the nature of the respondent's diagnosed psychiatric illness, pedophilia, and the severity of the mental abnormality itself, manifested in offenses committed over a twenty-five year period, was sufficient under *Hendricks* and *Crane* to distinguish the respondent from the "dangerous but typical recidivist convicted in an ordinary case." 264 Ill.Dec. 755, 771 N.E.2d at 465. It found that the trial court's failure to instruct on lack of volitional control under the circumstances of that case was not reversible error. 264 Ill.Dec. 755, 771 N.E.2d at 466.

However, *Hancock* is not persuasive authority in Missouri for two reasons. First, the states that have similar sexual predator statutes have reached different conclusions on whether *Crane* requires a separate finding by the court or jury on volitional control, and if so, the nature and extent of such finding.[2] It does not appear that Missouri and Illinois agree on these questions. Second, the Missouri Supreme Court in *Thomas* did not indicate that it would recognize any exceptions to its requirement that the jury instruction on mental abnormality require a finding of

serious difficulty. We are bound by this decision.

The judgment of the trial court ordering a new trial is affirmed on the grounds that the instruction defining "mental abnormality" did not contain the language required by *Thomas*.

PAUL J. SIMON, P.J. and GARY M. GAERTNER, SR., J., concur.

---

2. See, *In re Treatment and Care of Luckabaugh*, 351 S.C. 122, 568 S.E.2d 338, 348 (2002) (no special finding required); *Hancock*, 264 Ill.Dec. 755, 771 N.E.2d at 465 (no specific determination required in every case); *Laxton*, 647 N.W.2d at 793–95 (serious difficulty is implicit in nexus between the mental disorder and substantial probability of future sexual violence; failure to instruct on serious difficulty not error); *In re Civil Commitment of Ramey*, 648 N.W.2d 260, 266–67 (Minn.App.2002) (some judicial lack of con-

trol determination must be made whether it be "difficult, if not impossible", "serious difficulty", or inability to "adequately control"); *Converse*, 823 So.2d at 297 (Fla.App.2002) (jury must find that the offender's dangerousness was caused by or linked with a mental abnormality or personality disorder that made it "difficult, if not impossible" to control.); *People v. Wollschlager*, 99 Cal.App.4th 1303, 100 Cal.App.4th 1303A, 122 Cal.Rptr.2d 171, 174 (2002) (sufficient to instruct in words of statute).