Filed 5/15/14  P. v. Snavely CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063684 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. MH102461) |
| GARY GENE SNAVELY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Affirmed.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kristine A. Gutierrez and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

Gary Gene Snavely appeals an order denying his Welfare and Institutions Code[1] section 6608 petition for conditional release from his civil commitment as a sexually violent predator.  On appeal, he contends his constitutional right to equal protection was violated because the Sexually Violent Predators Act (§ 6600 et seq.) (the SVP Act or the Act) placed on him the burden to prove he was suitable for conditional release.  He asserts that neither *People v. McKee* (2010) 47 Cal.4th 1172 (*McKee I*) nor *People v. McKee* (2012) 207 Cal.App.4th 1325 (*McKee II*) decided this issue.  Because, as discussed below, in *McKee II* we decided the Act does not violate the equal protection right of a sexually violent predator (SVP) by placing on him or her the burden to prove entitlement to release, whether conditional or unconditional, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In September 2012, Snavely filed the instant section 6608 petition for conditional release and/or unconditional discharge from his civil commitment as an SVP.  Snavely did not allege, and the record does not show, the Department of Mental Health (DMH) authorized his petition.  His petition alleged he was first civilly committed as an SVP in 1997 and, after showing consistent progress in sex offender therapy and relapse prevention offender therapy, he was conditionally released in June 2008.  In September

---

[1]     All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]     Because the evidence presented at the hearing on Snavely's section 6608 petition for conditional release is immaterial to our disposition of his facial challenge to the Act, we only briefly discuss it in this opinion.

2008, his conditional release was revoked based on his abuse of one of his psychotropic medications and his fantasy involving women's feces. Snavely alleged he had since made sufficient progress in his therapy and was entitled to placement in a conditional release program for one year or unconditional discharge from civil commitment.

During a five-day trial, the trial court heard the testimony of Snavely's therapists and other treatment providers, who generally described his progress during commitment and/or their belief he was ready for conditional release, followed by the testimony of the State of California's forensic psychologist who concluded Snavely was not ready for conditional release. On February 15, 2013, the trial court issued a statement of decision denying the petition. The court concluded Snavely had not met his burden to prove by a preponderance of the evidence he would not be a danger to others because of his diagnosed mental state while under supervision and treatment in the community. Snavely timely filed a notice of appeal challenging the order denying his petition.

DISCUSSION

I

*The SVP Act and Proposition 83*

In *McKee I*, the California Supreme Court summarized the SVP Act and Proposition 83's 2006 amendment of the Act (*McKee I*, *supra*, 47 Cal.4th at pp. 1185-1188), which summary we quote in large part as follows:

"The Act, as originally enacted (Stats. 1995, ch. 763, § 3, p. 5922), provided for the involuntary civil commitment for a two-year term of confinement and treatment of

3

persons who, by a unanimous jury verdict after trial (Welf. & Inst. Code, former §§ 6603, subd. (d), 6604), are found beyond a reasonable doubt to be an SVP (former § 6604). [Citations.]  A person's commitment could not be extended beyond that two-year term unless a new petition was filed requesting a successive two-year commitment. [Citations.]  On filing of a recommitment petition, a new jury trial would be conducted at which the People again had the burden to prove beyond a reasonable doubt that the person was currently an SVP.  [Citations.] . . .

"As originally enacted, an SVP was defined as 'a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.'  (Former § 6600, subd. (a).)  A 'sexually violent offense' included a Penal Code section 288 lewd act on a child under age 14.  [Citations.] Under the Act, a person is 'likely' to engage in sexually violent criminal behavior (i.e., reoffend) if he or she 'presents a substantial danger, that is, a serious and well-founded risk, that he or she will commit such crimes if free in the community.'  [Citation.] [¶] . . . [¶]

"On November 7, 2006, California voters passed Proposition 83, entitled 'The Sexual Predators Punishment and Control Act: Jessica's Law' amending the Act effective November 8, 2006. . . .  Proposition 83 . . . changes an SVP commitment from a two-year term to an indefinite commitment. . . .

4

"Pursuant to Proposition 83, section 6604, which had prescribed a two-year term for SVP's, now provides in relevant part: 'If the court or jury determines that the person is a sexually violent predator, the person shall be committed for an *indeterminate* term to the custody of the DMH for appropriate treatment and confinement. . . .' (Italics added.) Proposition 83 did not change section 6604's requirement that a person's initial commitment as an SVP be proved at trial beyond a reasonable doubt. Under Proposition 83, section 6605 continues to require current examinations of a committed SVP at least once every year. (§ 6605, subd. (a).) However, Proposition 83 added new provisions to section 6605 regarding the DMH's obligations: Pursuant to section 6605, subdivision (a), the DMH now files an annual report in conjunction with its examination of SVP's that 'shall include consideration of whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative or an unconditional release is in the best interest of the person and conditions can be imposed that would adequately protect the community.' Subdivision (b) now provides that '[i]f the [DMH] determines that either: (1) the person's condition has so changed that the person no longer meets the definition of a sexually violent predator, or (2) conditional release to a less restrictive alternative is in the best interest of the person and conditions can be imposed that adequately protect the community, the director shall authorize the person to petition the court for conditional release to a less restrictive alternative or for an unconditional discharge.' (§ 6605, subd. (b).) If the state

5

opposes the director's petition, then, as under the pre-Proposition 83 statute, it must prove beyond a reasonable doubt that the person still meets the definition of an SVP.

"In the event the DMH does *not* authorize the committed person to file a petition for release pursuant to section 6605, the person nevertheless may file, as was the case with the pre-Proposition 83 Act, a petition for conditional release for one year and subsequent unconditional discharge pursuant to section 6608. (§ 6608, subd. (a).) Section 6608, subdivision (i), which was also unamended by the Act, provides: 'In any hearing authorized by this section, *the petitioner shall have the burden of proof by a preponderance of the evidence*.' (Italics added.) After a trial court denies a section 6608 petition, 'the person may not file a new application until one year has elapsed from the date of the denial.' (§ 6608, subd. (h).)

"In short, under Proposition 83, an individual SVP's commitment term is indeterminate, rather than for a two-year term as in the previous version of the Act. An SVP can only be released conditionally or unconditionally if the DMH authorizes a petition for release and the state does not oppose it or fails to prove beyond a reasonable doubt that the individual still meets the definition of an SVP, or if the individual, petitioning the court on his own, is able to bear the burden of proving by a preponderance of the evidence that he is no longer an SVP. In other words, the method of petitioning the court for release and proving fitness to be released, which under the former Act had been the way an SVP could cut short his two-year commitment, now becomes the only means

6

of being released from an indefinite commitment when the DMH does not support release."[3] (*McKee I*, *supra*, 47 Cal.4th at pp. 1185-1188, fns. omitted.)

## II

### *Equal Protection Clause*

In *McKee II*, we discussed the right to equal protection under the federal and California Constitutions and repeat that discussion here. (*McKee II*, *supra*, 207 Cal.App.4th at pp. 1334-1335.) "The right to equal protection of the laws is guaranteed by the Fourteenth Amendment to the federal Constitution and article I, section 7 of the California Constitution. The 'first prerequisite' to an equal protection claim is ' "a showing that 'the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.' " . . . ' [Citation.] [¶] 'Equal protection applies to ensure that persons similarly situated with respect to the legitimate purpose of the law receive like treatment; equal protection does not require identical treatment. [Citation.]' [Citation.] The state 'may adopt more than one procedure for isolating, treating, and restraining dangerous persons; and differences will be upheld if justified. [Citations.] Variation of the length and conditions of confinement, depending on degrees of danger reasonably perceived as to special classes of persons, is a valid exercise of power.' " (*People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1216-1217.)

---

3      Effective as of June 27, 2012, the Act was amended to replace references to the Department of Mental Health (DMH) with the Director of State Hospitals (DSH). (See e.g., §§ 6605, 6608, as amended by Stats. 2012, ch. 24, §§ 144, 146.)

"Strict scrutiny is the appropriate standard against which to measure claims of disparate treatment in civil commitment."  (*People v. Green* (2000) 79 Cal.App.4th 921, 924.)  Applying the strict scrutiny standard, the state has the burden of establishing it has a compelling interest that justifies the law and that the distinctions, or disparate treatment, made by that law are necessary to further its purpose.  (*Warden v. State Bar* (1999) 21 Cal.4th 628, 641.)  Alternatively stated, applying the strict scrutiny standard, a law "is upheld only if it is necessary to further a compelling state interest."  (*People v. Buffington* (1999) 74 Cal.App.4th 1149, 1156.)

III

*McKee I*

In *McKee I*, *supra*, 47 Cal.4th 1172, the California Supreme Court addressed McKee's claim that his equal protection right was violated because SVP's are treated disparately from mentally disordered offenders (MDO's) and persons found not guilty by reason of insanity (NGI's).  Regarding SVP's and MDO's, *McKee I* stated:

> "SVP's under the amended Act are given indeterminate commitments and thereafter have the burden to prove they should be released (unless the DMH authorizes a petition for release).  In contrast, an MDO is committed for a one-year period and thereafter has the right to be released unless the People prove beyond a reasonable doubt that he or she should be recommitted for another year.  There is therefore no question that, after the initial commitment, an SVP is afforded different and less favorable procedural protections than an MDO."  (*McKee I*, *supra*, 47 Cal.4th at p. 1202.)

8

*McKee I* concluded SVP's and MDO's are similarly situated for equal protection purposes.  (*McKee I*, *supra*, 47 Cal.4th at pp. 1202-1203.)  The court also concluded SVP's and NGI's are similarly situated for equal protection purposes.  (*Id*. at p. 1207.)

However, because the People had not yet carried their burden to justify the disparate treatment of SVP's, the court remanded the matter to the trial court for an evidentiary hearing to determine whether, applying the strict scrutiny standard, the People could justify the disparate treatment of SVP's under the Act by showing the disparate treatment of SVP's was necessary to further compelling state interests.  (*McKee I*, *supra*, 47 Cal.4th at pp. 1184, 1197-1198.)  The court described that disparate treatment as the imposition on SVP's of *a greater burden* than is imposed on MDO's and NGI's *to obtain release from commitment*.  (*Id*. at pp. 1208-1209.)  The court described the burden the People would have on remand, stating:

> "*It must be shown that*, notwithstanding the similarities between SVP's and MDO's, the former as a class bear a substantially greater risk to society, and that therefore *imposing on them a greater burden before they can be released from commitment is needed to protect society*.  This can be shown in a variety of ways.  For example, it may be demonstrated that the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely.  Or it may be that SVP's pose a greater risk to a particularly vulnerable class of victims, such as children. . . .  Or the People may produce some other justification." (*McKee I*, *supra*, 47 Cal.4th at p. 1208, italics added, fn. omitted.)

9

## IV

### *McKee II*

On remand after *McKee I*, the trial court conducted a 21-day evidentiary hearing to determine whether the People met their burden to justify the disparate treatment of SVP's. (*McKee II*, *supra*, 207 Cal.App.4th at p. 1330.)  Following that hearing, the trial court concluded the People met that burden and confirmed McKee's civil commitment as an SVP.  (*Ibid*.)  On appeal, McKee asserted the trial court erred.  (*Ibid*.)

In *McKee II*, we independently reviewed the evidence presented at the evidentiary hearing and concluded "the trial court correctly found the People presented substantial evidence to support a reasonable perception by the electorate that SVP's present a substantially greater danger to society than do MDO's or NGI's, and therefore the disparate treatment of SVP's under the Act is necessary to further the People's compelling interests of public safety and humane treatment of the mentally disordered."  (*McKee II, supra,* 207 Cal.App.4th at pp. 1330-1331.)  In so concluding, we discussed the testimony of the People's witnesses regarding the recidivism rates of SVP's and MDO's/NGI's, the greater trauma of victims of sexual offenses, and diagnostic and treatment differences between SVP's and MDO's/NGI's.  (*Id*. at pp. 1340-1347.)  We concluded "the People on remand met their burden to present substantial evidence . . . justifying the amended Act's *disparate treatment of SVP's* (e.g., *by* imposing indeterminate terms of civil commitment and *placing on them the burden to prove they should be released*)."  (*Id*. at p. 1347, italics added.)  We further concluded the People showed SVP's as a class bear a substantially

10

greater risk to society than do MDO's and NGI's as a class, and therefore imposing on SVP's " '*a greater burden before they can be released* from commitment *is needed to protect society*.' " (*Ibid*., italics added.)

## V

### *Snavely's Equal Protection Claim*

Snavely contends the trial court erred by denying his section 6608 petition for conditional release because his constitutional right to equal protection of the law was violated. He claims that, pursuant to the Act, the burden was placed on him to prove, by a preponderance of the evidence, he is suitable for conditional release under section 6608. He asserts, and the People disagree, that neither *McKee I* nor *McKee II* decided this issue and therefore the trial court's judgment must be reversed and the matter remanded for either a new hearing with application of the appropriate burden of proof or, in the alternative, an evidentiary hearing to allow the People to present evidence justifying the disparate treatment of SVP's.

### A

Snavely first asserts he did not waive or forfeit his equal protection claim when his counsel did not raise that claim below or, if he did, he was denied his right to effective assistance of counsel. To prove ineffective assistance of counsel, Snavely must show, by a preponderance of the evidence, that (1) his counsel's representation was deficient (i.e., was below prevailing professional standards of reasonableness); and (2) he was prejudiced by that deficient performance (i.e., it is reasonably probable that, but for his

11

counsel's deficient performance, he would have obtained a more favorable result).
(*Strickland v. Washington* (1984) 466 U.S. 668, 687, 691-692; *People v. Ledesma* (1987) 43 Cal.3d 171, 215-218; *People v. Pope* (1979) 23 Cal.3d 412, 425.)

For purposes of this opinion, we assume arguendo that Snavely waived or forfeited his equal protection claim by not raising it below and his counsel performed deficiently by not raising that claim, and therefore address only the issue of prejudice from that assumed deficient performance. Because, as we conclude below, his equal protection right was not violated by application of section 6608's burden of proof provision, we conclude Snavely has not carried his burden to show he was prejudiced by his counsel's assumed deficient performance. (*Strickland v. Washington*, *supra*, 466 U.S. at pp. 687, 691-692; *People v. Ledesma*, *supra*, 43 Cal.3d at pp. 217-218; *People v. Pope*, *supra*, 23 Cal.3d at p. 425.)

B

Under the Act, an SVP's commitment term is indeterminate, and an individual so committed can only be released conditionally or unconditionally (1) if the DSH authorizes a petition for release and the state does not oppose it or fails to prove beyond a reasonable doubt that the individual still meets the definition of an SVP, *or* (2) if the individual, petitioning the court on his or her own, is able to bear the burden of proving by a preponderance of the evidence that he or she is no longer an SVP and is entitled to conditional or unconditional release. (§§ 6604, 6605, 6608; *McKee I*, *supra*, 47 Cal.4th at pp. 1185-1188, fns. omitted.) If the DSH does not, as in this case, authorize the

12

committed person to file a petition for release pursuant to section 6605, the person

nevertheless may file a petition for conditional release for one year and subsequent

unconditional discharge pursuant to section 6608. (§ 6608, subd. (a).)[4]

Section 6608, subdivision (e), provides the procedure for the hearing on an SVP's

petition for conditional release, stating:

> "The court shall hold a hearing to determine whether the person
> committed would be a danger to the health and safety of others in
> that it is likely that he or she will engage in sexually violent criminal
> behavior due to his or her diagnosed mental disorder if under
> supervision and treatment in the community. . . . If the court at the
> hearing determines that the committed person would not be a danger
> to others due to his or her diagnosed mental disorder while under
> supervision and treatment in the community, the court shall order the
> committed person placed with an appropriate forensic conditional
> release program operated by the state for one year. . . ."

Section 6608, subdivision (i), provides: "In a hearing authorized by this section, *the*

*committed person shall have the burden of proof by a preponderance of the*

*evidence . . . .*"[5] (Italics added.) Therefore, in a section 6608 hearing on a petition for

---

[4]     Section 6608, subdivision (a), provides in pertinent part: "A person who has been committed as a sexually violent predator shall be permitted to petition the court for conditional release with or without the recommendation or concurrence of the Director of State Hospitals. . . ."

[5]     After amendments that were effective as of January 1, 2014, section 6608, subdivision (i), now provides: "In a hearing authorized by this section, the committed person shall have the burden of proof by a preponderance of the evidence, unless the report required by Section 6604.9 determines that conditional release to a less restrictive alternative is in the best interest of the person and that conditions can be imposed that would adequately protect the community, in which case the burden of proof shall be on the state to show, by a preponderance of the evidence, that conditional release is not appropriate."

conditional release, the committed person (i.e., the SVP) has the burden to prove, by a preponderance of the evidence, he or she would not be a danger to others due to his or her diagnosed mental disorder while under supervision and treatment in the community. (§ 6608, subds. (e), (i).)

Effective as of January 1, 2014, section 6608, subdivision (k), was added, providing:

> "After a minimum of one year on conditional release, the committed person, with or without the recommendation or concurrence of the Director of State Hospitals, may petition the court for unconditional discharge. The court shall use the procedures described in subdivisions (a) and (b) of Section 6605 to determine if the person should be unconditionally discharged from commitment on the basis that, by reason of a diagnosed mental disorder, he or she is no longer a danger to the health and safety of others in that it is not likely that he or she will engage in sexually violent criminal behavior."

C

Snavely asserts his equal protection rights were violated because the Act placed the burden of proof on him to show by a preponderance of the evidence that he is suitable for conditional release under section 6608. However, based on our review of *McKee I* and *McKee II*, we conclude that question has been decided adversely to the class of SVP's that includes Snavely.

In *McKee I*, the California Supreme Court noted the disparate treatment of SVP's under the Act included their indeterminate commitments and burden thereafter to prove they should be released (unless the DSH authorizes a petition for release). (*McKee I*, *supra*, 47 Cal.4th at p. 1202.) The court described that disparate treatment as the

14

imposition on SVP's of *a greater burden* than is imposed on MDO's and NGI's *to obtain*

*release from commitment*.  (*Id*. at pp. 1208-1209.)  In remanding the matter for an

evidentiary hearing to allow the People to justify that disparate treatment of SVP's, the

court described the burden the People would have, stating:

> "*It must be shown that*, notwithstanding the similarities between
> SVP's and MDO's, the former as a class bear a substantially greater
> risk to society, and that therefore *imposing on them a greater burden*
> *before they can be released from commitment is needed to protect*
> *society*.  This can be shown in a variety of ways.  For example, it
> may be demonstrated that the inherent nature of the SVP's mental
> disorder makes recidivism as a class significantly more likely.  Or it
> may be that SVP's pose a greater risk to a particularly vulnerable
> class of victims, such as children. . . .  Or the People may produce
> some other justification."  (*McKee I*, *supra*, 47 Cal.4th at p. 1208,
> italics added, fn. omitted.)

In *McKee II*, we independently reviewed the evidence presented at that evidentiary

hearing after remand and concluded the People had met their burden to justify that

disparate treatment of SVP's.  (*McKee II*, *supra*, 207 Cal.App.4th at pp. 1330, 1347.)  We

concluded the People presented substantial evidence to support a reasonable perception

by the electorate that SVP's present a substantially greater danger to society than do

MDO's or NGI's, and therefore the disparate treatment of SVP's under the Act is

necessary to further the People's compelling interests of public safety and humane

treatment of the mentally disordered.  (*Id*. at p. 1331.)  Importantly for this case, we

concluded "the People on remand met their burden to present substantial evidence . . .

justifying the amended Act's *disparate treatment of SVP's* (e.g., *by* imposing

indeterminate terms of civil commitment and *placing on them the burden to prove they*

15

*should be released*)." (*Id.* at p. 1347, italics added.) We further concluded the People showed SVP's as a class bear a substantially greater risk to society than do MDO's and NGI's as a class, and therefore imposing on SVP's " '*a greater burden before they can be released* from commitment *is needed to protect society*.' " (*Ibid.*, italics added.)

Therefore, both *McKee I* and *McKee II* considered in their equal protection analyses disparate treatment of SVP's that included the Act's placement on SVP's of the burden of proof to obtain release. In using the term "release," both decisions showed an intent to include both conditional and unconditional releases within that term. Both decisions recognized the Act's framework that sets forth procedures for an SVP to file a petition, without the authorization or concurrence of the DMH/DSH, for conditional release under section 6608. Under the statutory framework, presuming the DMH/DSH does not authorize most petitions by SVP's for release (which presumption is not contradicted by the records in *McKee II* and this case), a section 6608 petition for conditional release is the most common procedure by which SVP's can obtain release from their civil commitments. Absent authorization or concurrence of the DMH/DSH, an SVP can obtain *unconditional* release or discharge only after first obtaining *conditional* release and then satisfactorily completing at least one year in a forensic conditional release program. (See Welf. & Inst. Code, former § 6608, subd. (d); cf. new § 6608, subd. (k) [eff. Jan. 1, 2014].) Therefore, in using the term "release," *McKee I* and *McKee II* clearly intended to include *conditional release* within the disparate treatment of SVP's for purposes of their equal protection analyses.

16

Based on our reading of *McKee II*, our conclusion that the People met their burden to justify the disparate treatment of SVP's under the Act included that disparate treatment of SVP's consisting of the burden imposed on SVP's to prove, by a preponderance of the evidence, they are suitable for conditional release under section 6608. Our holding in *McKee II* was *not* limited to only disparate treatment of SVP's consisting of imposition of an indeterminate civil commitment. In our opinion, we expressly concluded the People on remand met their burden to justify "the amended Act's *disparate treatment of SVP's* (e.g., *by* imposing indeterminate terms of civil commitment and *placing on them the burden to prove they should be released*)." (*McKee II, supra,* 207 Cal.App.4th at p. 1347, italics added.)

As used in *McKee II*, "[t]he burden to prove they should be released" necessarily includes, and *only* includes, the burden imposed on SVP's to prove they should be conditionally released under section 6608, because it is only in the context of a section 6608 petition that the burden of proof is placed on the SVP. (*McKee II, supra,* 207 Cal.App.4th at p. 1347.) At the time of the trial court's February 2013 decision, the Act provided that when the DMH authorized an SVP's petition for conditional release, the burden of proof was on the People to show, beyond a reasonable doubt, that the SVP's diagnosed mental disorder remains such that he or she is a danger to the health and safety of others and is likely to engage in sexually violent criminal behavior if discharged. (Welf. & Inst. Code, former § 6605, subd. (d); cf. new § 6608, subd. (i) [eff. Jan. 1, 2014, when the DSH recommends conditional release for an SVP, the People now have the

17

burden of proof to show, by a preponderance of the evidence, that conditional release is not appropriate.].)  Therefore, *McKee II* considered disparate treatment that includes the placement of the burden of proof on SVP's to show they are suitable for, or entitled to, conditional release under section 6608 and concluded that burden of proof did not violate the equal protection rights of SVP's as a class.  Because in *McKee II* we rejected the same equal protection claim raised by Snavely in this appeal, we conclude the trial court did not err by denying his petition for conditional release.  None of the cases cited by Snavely persuade us to reach a contrary conclusion.

Assuming arguendo we did not decide in *McKee II* the question whether disparate treatment in placing the burden on SVP's to prove they are suitable for, or entitled to, conditional release under section 6608, we nevertheless conclude, based on our independent review of the evidence presented at the evidentiary hearing discussed in *McKee II*, the People met their burden to justify that disparate treatment of SVP's and therefore there is no need for an evidentiary hearing on that issue in this case.  We conclude the People showed SVP's as a class bear a substantially greater risk to society than MDO's and NGI's, and therefore imposing on SVP's a greater burden before they can be conditionally released from their civil commitments is necessary to protect society.  (*McKee II*, *supra*, 207 Cal.App.4th at p. 1347.)  As discussed above, SVP's are treated disparately in obtaining conditional release.  Under section 6608, subdivision (i), absent DMH/DSH authorization or concurrence, SVP's have the burden to prove, by a preponderance of the evidence, they are entitled to conditional release and placement in

18

an appropriate forensic conditional release program.  In contrast, MDO's are entitled to release for treatment on an outpatient basis if the court finds there is reasonable cause to believe the person can be safely and effectively treated on an outpatient basis.  (Pen. Code, § 2972, subd. (d).)  However, that disparate treatment was justified by the evidence presented by the People at the *McKee II* hearing.  The People showed the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely, SVP's pose a greater risk and unique dangers to a particularly vulnerable class of victims, such as children, and SVP's have diagnostic and treatment differences from MDO's and NGI's, thereby supporting a reasonable perception by the electorate that the disparate treatment of SVP's under the Act is necessary to further the state's compelling interest in public safety and humanely treating the mentally disordered.  (*McKee,* at p. 1347.)  Therefore, the Act's disparate treatment of SVP's in placing on them the burden to prove their suitability for conditional release does not violate the equal protection right of SVP's.

DISPOSITION

The order is affirmed.

McDONALD, J.

WE CONCUR:

NARES, Acting P. J.

IRION, J.

19